BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
ADAM M. BUCCI (327312)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com
abucci@bholaw.com

BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III*
H. CLAY BARNETT, III*
J. MITCH WILLIAMS*
DYLAN T. MARTIN*
TRENTON H. MANN*
218 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@beasleyallen.com
Trent.Mann@BeasleyAllen.com

Attorneys for Plaintiffs

* *pro hac vice forthcoming*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

RADLEY ALCANTARA, ASHLEY BOWMAN, KEVIN LUCEY, AUSTIN POLSON, TIFFANY RICHARDSON, and BRIAN WISE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

AMERICAN HONDA MOTOR CO., INC., and HONDA MOTOR COMPANY LIMITED,

Defendants.

Case No. 2:25-cv-06009

**CLASS ACTION**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs Radley Alcantara, Ashley Bowman, Kevin Lucey, Austin Polson, Tiffany Richardson, and Brian Wise ("Plaintiffs"), individually and on behalf of the other members of the below-defined statewide classes, which they respectively seek to represent ("Class"), hereby allege against Defendants American Honda Motor Co., Inc. and Honda Motor Company Limited (together, "Honda"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## NATURE OF THE CASE

1. For decades, Honda has successfully branded itself as a manufacturer of reliable cars. As a result, consumers reasonably expect, based on Honda's long-term advertising and branding, that Honda vehicles will reliably last for their expected lifespans.

2. Honda manufactures and sells certain motor vehicles equipped with high-compression 1.5-liter and 2.0-liter i-VTEC turbocharged gasoline direct injection engines. Car engines, like the ones installed in the Class Vehicles, are reasonably expected to last for at least 200,000 miles.

3. Turbocharged engines have advantages but come at a cost. They produce far greater internal pressure and heat than naturally aspirated engines. As a result, they must be designed and manufactured with components that are tolerant of high-compression forces and heat and must be adequately sealed and cooled to prevent internal component damage and engine failure.

4. For the vehicles equipped with the engines at issue, Honda failed to design vehicles that properly manage the increased compression and heat (the "Engine Defect"). Under such higher compression, the head gasket is subjected to greater force beyond its design intent making it more susceptible to cracking, thus compromising the head gasket.

5. Once the head gasket is compromised, engine coolant leaches through and collects in the grooves on the engine's cylinder head. The leached coolant then degrades the gasket sealant, allowing coolant to leak into the Engine's cylinders.

6. The coolant leaks cause at least three related problems. First, once the coolant leaks, an insufficient amount remains to adequately cool the engine, causing the engine to overheat, resulting in damage that includes warping, engine seizure, and fire.

7. Second, when the coolant leaks into the engine's pistons, the engine misfires, releases white exhaust smoke (from burning coolant), and loses motive power.

8. Third, the leaked coolant mixes with the engine oil, diluting and contaminating the oil, causing corrosion and excessive and premature engine wear.

9. In addition to damaging the engine and reducing vehicle performance, the Engine Defect creates a serious safety risk. For example, some owners have complained that their "car effectively lost power and [] was stuck coasting on a road where traffic regularly travels between 45-50+ mph," and how the Engine Defect stranded them "on the far left side of the highway near brick side wall and had to find a way to get to the right shoulder of the highway while in coming car passed by."

10. The Engine Defect is a latent defect that manifests within and outside the warranty period and well within the reasonably expected useful life of both the Class Vehicles and the engines installed in them.

11. The Engine Defect is covered by Honda's warranty, but Honda refuses to honor its warranty.

12. Moreover, Honda has not released or made freely available a countermeasure that adequately fixes the Engine Defect.

13. The Engine Defect impacts owners or lessees of 2018 to 2022 model year Honda Accords, 2016 to 2022 model year Honda Civics, 2017 to 2022 model year Honda CR-Vs, 2021-2022 model year Acura RDXs, and 2019-2022 model year

Acura TLXs equipped with the 1.5-liter or 2.0-liter i-VTEC turbocharged gasoline direct injection engine (the "Class Vehicles").[1]

14. On behalf of themselves and the proposed Classes defined below, Plaintiffs assert claims against Honda for breach of express and implied warranties, violation of numerous state's Consumer Protection Acts, and unjust enrichment. Plaintiffs seek damages and equitable relief to compensate Plaintiffs and the Classes and to remedy the Defect.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one member of the Class is diverse in citizenship from one Defendant and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

16. This Court has personal jurisdiction over American Honda Motor Company, Inc. because it is a California corporation with its corporate headquarters located in this district.

17. This Court has personal jurisdiction over Honda Motor Company Ltd. because Honda Motor Company Ltd. has purposefully availed itself of the privilege of doing business within California, including by marketing and selling the Class Vehicles, and exercising jurisdiction over Honda Motor Company Ltd. does not offend traditional notions of fair play and substantial justice.

18. Venue is proper in this district under 28 U.S.C. § 1391 because American Honda Motor Company, Inc. resides within this district and a substantial part of the events and omission giving rise to Plaintiffs' claims occurred within this district.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles.

# PARTIES

## Plaintiffs

### Alabama

19. **Plaintiff Tiffany Richardson** is a citizen of Alabama and resides in Montgomery, Alabama.

20. Plaintiff owns a 2018 Honda Accord, which she purchased used from McConnell Honda in Montgomery, Alabama in November 2019.

21. Plaintiff Richardson's 2018 Honda Accord is equipped with a 1.5-liter i-VTEC turbocharged gasoline direct injection engine.

22. Prior to purchasing her Honda, Plaintiff Richardson test drove the vehicle and interacted with at least one sales representative, all without Honda disclosing the Engine Defect.

23. Through her exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Richardson was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to her decision to purchase her Class Vehicle.

24. When she purchased the vehicle, she believed, based on Honda's marketing message, that she would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

25. At no point before Plaintiff Richardson purchased her vehicle did Honda disclose the Engine Defect to her, including that as a result, the vehicle was not safe and dependable, as advertised.

26. Plaintiff Richardson's vehicle was not safe and dependable. The Engine Defect manifested in her vehicle. On or around February 23, 2023, Plaintiff's vehicle experienced partial engine shutdown where her vehicle would not go over 20 mph and multiple dashboard warning lights illuminated. Plaintiff Richardson had her vehicle towed to McConnell Honda where it was diagnosed with a blown head gasket and coolant leaks into cylinder # 3. McConnell Honda replaced the head gasket, spark

plugs, fuel injectors, and pipe. Plaintiff was forced to pay $1,397.93 out-of-pocket for the repair. Plaintiff Richardson's vehicle suffered a second blown head gasket in April 2025. McConnell Honda found coolant had leaked into cylinder # 1. The dealership replaced the head gasket, spark plugs, fuel injectors, and turbocharger. Plaintiff Richardson was forced to pay $1,216.46 out-of-pocket for the repair. Honda has not reimbursed Plaintiff Richardson for either repair.

27. Plaintiff Richardson's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

28. As such, Plaintiff Richardson has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

29. Plaintiff Richardson did not receive the benefit of her bargain. She purchased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

30. Had Honda disclosed the Engine Defect, Plaintiff Richardson would not have purchased her Class Vehicle or would have paid less to do so.

31. Plaintiff Richardson would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

32. **Plaintiff Austin Polson** is a citizen of Alabama and resides in Montgomery, Alabama.

33. Plaintiff Polson owns a 2019 Honda Accord, which he purchased from McConnell Honda in Montgomery, Alabama on April 19, 2019.

34. Plaintiff Polson's 2019 Honda Accord is equipped with a 1.5-liter i-VTEC turbocharged gasoline direct injection engine.

35. Prior to purchasing his Honda, Plaintiff Polson reviewed Honda's promotional materials, the Monroney sticker, sales brochures, test drove the vehicle and interacted with at least one sales representative, all without Honda disclosing the Engine Defect.

36. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Polson was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

37. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

38. At no point before Plaintiff Polson purchased his vehicle did Honda disclose the Engine Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

39. Plaintiff Polson's vehicle was not safe and dependable. The Engine Defect manifested in his vehicle. On or around April 17, 2024, at approximately 156 odometer miles, Plaintiff experienced multiple dash warning lights, check engine light, and performance issues such as engine sputtering and vibration of the vehicle as it drove. He took the vehicle to McConnell Honda who informed Plaintiff that coolant was leaking into the cylinders and critical engine failure was eminent. The dealership informed Plaintiff that he would need a new head gasket, spark plugs, turbo charger, and coolant lines. Approximately three weeks later, Plaintiff Polson's vehicle again experienced drivability issues. Plaintiff presented his vehicle to McConnell Honda again and he was informed the as a result of the damage caused by the blown head gasket and the engine overheating, the wiring harness was damaged and should have been replaced when the head gasket was replaced. McConnell Honda replaced the engine wiring harness.

40. The Engine Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Polson, other occupants in his Class Vehicle, and others on the road.

40. Plaintiff Polson's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

41. As such, Plaintiff Polson has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

42. Plaintiff Polson did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

43. Had Honda disclosed the Engine Defect, Plaintiff Polson would not have purchased his Class Vehicle or would have paid less to do so.

44. Plaintiff Polson would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

**Illinois**

40. **Plaintiff Radley Alcantara** is a citizen of Illinois and resides in Chicago, Illinois.

41. Plaintiff Alcantara owns a 2018 Honda Accord, which he purchased new from McGrath City Honda in Chicago, Illinois in April 2018.

42. Plaintiff Alcantara's 2018 Honda Accord is equipped with a 1.5-liter i-VTEC turbocharged gasoline direct injection engine.

43. Prior to purchasing his Honda, Plaintiff Alcantara reviewed Honda's promotional materials, the Monroney sticker, sales brochures, test drove the vehicle

and interacted with at least one sales representative, all without Honda disclosing the Engine Defect.

44. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Alcantara was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

45. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

46. At no point before Plaintiff Alcantara purchased his vehicle did Honda disclose the Engine Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

47. Plaintiff Alcantara's vehicle was not safe and dependable. The Engine Defect manifested in his vehicle. In January 2025, at approximately 117,604 odometer miles, Plaintiff experienced multiple dash warning lights, check engine light, and performance issues such as engine sputtering and limp mode. On January 20, 2025, Plaintiff presented his vehicle to Muller Honda in Highland Park, Illinois for repair. The dealership diagnosed his vehicle with a blown head gasket. Due to the high cost of the repair, Plaintiff took the vehicle to an independent mechanic who performed the repair. Plaintiff Alcantara had an independent mechanic replace the head gasket on or around February 11, 2025. Within minutes of the replacement, it was discovered that the wrong head gasket was installed on the vehicle. The independent mechanic quickly installed the correct head gasket. However, because the head gasket replacement does not cure the overall defect, Plaintiff Alcantara's vehicle continues to suffer from the Engine Defect.

48. The Engine Defect has created a dangerous condition that gives rise to a clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Alcantara, other occupants in his Class Vehicle, and others on the road.

49. Plaintiff Alcantara's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

50. As such, Plaintiff Alcantara's has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

51. Plaintiff Alcantara did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

52. Had Honda disclosed the Engine Defect, Plaintiff Alcantara would not have purchased his Class Vehicle or would have paid less to do so.

53. Plaintiff Alcantara would purchase a vehicle from Honda in the future if Honda's representations about the vehicle, including its safety and durability, were accurate.

54. **Plaintiff Brian Wise** is a citizen of Illinois and resides in Geneva, Illinois.

55. Plaintiff Wise owns a 2018 Honda CRV Touring which he purchased new from Valley Honda in Naperville, Illinois in 2019.

56. Prior to purchasing his Honda, Plaintiff Wise reviewed Honda's promotional materials, sales brochures, test drove the vehicle and interacted with at least one sales representative, all without Honda disclosing the Engine Defect.

57. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Wise was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

58. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicle on the market.

59. At no point before Plaintiff Wise purchased his vehicle did Honda disclose the Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

60. Plaintiff Wise's vehicle was not safe and dependable. The Defect manifested in his vehicle. At approximately 62,000 odometer miles, Plaintiff Wise and his child experienced his vehicle enter limp mode, shudder while operating, and exhibit dashboard warning lights. Between February 2025 and May 2025, Plaintiff Wise visited McGrath Honda four times to diagnose the issue. Honda provided numerous "fixes" that did not relieve the vehicle of the defect. Eventually, McGrath Honda was able to diagnose the Defect. The Defect has created a dangerous condition that gives rise to clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Wise, other occupants in his class vehicle, and others on the road.

61. Plaintiff Wise's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

62. As such, Plaintiff Wise has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

63. Plaintiff Wise did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

64. Had Honda disclosed the Engine Defect, Plaintiff Wise would not have purchased his Class Vehicle or would have paid less to do so.

**Louisiana**

65. **Plaintiff Ashley Bowman** owns a 2020 Honda Accord which she purchased new from Richard Honda in Baton Rouge, Louisiana in 2021.

66. Prior to purchasing her Honda, Plaintiff Bowman reviewed Honda's promotional materials, sales brochures, test drove the vehicle and interacted with at least one sales representative all without Honda disclosing the Engine Defect.

67. Through her exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Bowman was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to her decision to purchase her Class Vehicle.

68. When she purchased the vehicle, she believed, based on Honda's marketing message, that she would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicle on the market.

69. At no point before Plaintiff Bowman purchased her vehicle did Honda disclose the Defect to her, including that as a result, the vehicle was not safe and dependable, as advertised.

70. Plaintiff Bowman's vehicle was not safe and dependable. The Defect manifested in her vehicle. At approximately 68,000 odometer miles, Plaintiff Bowman experienced her vehicle struggle to start and exhibit a jerking motion. She took the vehicle to Richard Honda which confirmed the Engine Defect had manifested in her vehicle and needed to replace the blown head gasket. The Engine Defect has created a dangerous condition that gives rise to clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Bowman, other occupants in her class vehicle, and others on the road.

71. Plaintiff Bowman's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

72. As such, Plaintiff Bowman has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

73. Plaintiff Bowman did not receive the benefit of her bargain. She purchased a vehicle of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

74. Had Honda disclosed the Engine Defect, Plaintiff Bowman would not have purchased her Class Vehicle or would have paid less to do so.

**Massachusetts**

75. **Plaintiff Kevin Lucey** is a citizen of Massachusetts and resides in Nahant, Massachusetts.

76. Plaintiff Lucey owns a 2019 Honda Accord Sport which he purchased certified pre-owned from Honda Village in Newtown, Massachusetts in August of 2019.

77. Prior to purchasing his Honda, Plaintiff Lucey reviewed Honda's promotional materials, sales brochures, test drove the vehicle and interacted with at least one sales representative all without Honda disclosing the Engine Defect.

78. Through his exposure to Honda's advertisements, promotional materials and other public statements, Plaintiff Lucey was aware of and believed Honda's marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle.

79. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer and more dependable than other vehicles on the market.

80. At no point before Plaintiff Lucey purchased his vehicle did Honda disclose the Engine Defect to him, including that as a result, the vehicle was not safe and dependable, as advertised.

81. Plaintiff Lucey's vehicle was not safe and dependable. The Engine Defect manifested in his vehicle. At approximately 90,000 odometer miles, Plaintiff Lucey's vehicle entered limp mode while driving on the freeway and displayed all of its dashboard lights. Plaintiff Lucey had the vehicle towed to his house before he was able to drive it to the Honda dealership. Honda Village confirmed the Defect in his vehicle. The Engine Defect has created a dangerous condition that gives rise to clear, substantial, and unreasonable risk of death or personal injury to Plaintiff Lucey, other occupants in his class vehicle, and others on the road.

82. Plaintiff Lucey's Class Vehicle is not subject to any technical service bulletins, special service campaigns, or recalls for the Engine Defect, as further explained below.

83. As such, Plaintiff Lucey has been left without a remedy and, as a result of Honda's conduct and the Engine Defect, is continuously exposed to an increased risk of severe injury or death.

84. Plaintiff Lucey did not receive the benefit of his bargain. He purchased a vehicle of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

85. Had Honda disclosed the Engine Defect, Plaintiff Lucey would not have purchased his Class Vehicle or would have paid less to do so.

**<u>Defendants</u>**

86. Defendant Honda Motor Company, Ltd. ("HML") is a Japanese corporation, with its principal place of business at 2-1-1, Minami-Aoyama Minato-Ku, 107-8556 Japan, and the parent of Defendant American Honda Motor Company, Inc.

87. HML through its various entities (including American Honda Motor Company), designs, manufacturers, markets, distributes, and sells Honda automobiles across the United States.

88. Defendant American Honda Motor Company, Inc. ("AHM") is a California corporation with its principal place of business in Torrance, California.

89. AHM is the United States sales and marketing subsidiary of, and is wholly owned by, HML, and is responsible for distributing, marketing, selling, and servicing Honda vehicles in the United States, including the Class Vehicles.

90. At all relevant times, AHM manufactured and produced the defective engine blocks at the Anna, Ohio Honda engine plant.

91. At all relevant times, AHM acted as an authorized agent, representative, servant, employee, and/or alter ego of HML while performing activities, including but not limited to advertising, marketing, warranties, selling Class Vehicles, disseminating technical information, and monitoring Honda vehicles in the United States.

92. AHM renders services on behalf of HML that are sufficiently important to HML and its sale of vehicles in the United States that HML would perform those services itself if AHM did not exist.

93. HML controls the public name and brand of AHM, and in consumer transactions, like those with Plaintiffs and the proposed classes, HML's unified brand and logo serve as its and AHM official seal and signature as to consumers.

94. HML operates AHM with a unity of interest and owners such that AHM is a mere instrumentality of its parent, HML.

95. HML and AHM engage in the same business enterprise and share common board members and employees. Upon information and belief, HML has, and at all relevant times had, the contractual right to exercise and in practice has exercised control over AHM's work, including but not limited to the manner of Honda Class Vehicles' marketing, the scope of written warranties, and representations made, and facts withheld from consumers and the public about the Engine Defect.

96. At all relevant times to this action, HML and AHM manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Honda brand

name throughout the United States. Defendants and/or its agents designed, manufactured, and/or installed the defective engines and/or components in the Class Vehicles. Additionally, Honda developed and disseminated the owner's manuals, warranty booklets, advertisements, maintenance schedule, and other promotional and technical matter relating to the Class Vehicles.

## FACTS COMMON TO ALL CAUSES OF ACTION

97. All Class Vehicles are equipped with a four-cylinder 1.5-liter or a 2.0-liter turbocharged engine (the "Engines"). The design, parts, and manufacturing of the Engines are substantially similar.

98. All Class Vehicles are equipped with a Duel Overhead Camshaft ("DOHC") and utilize a Valve Timing Electronically Controlled system ("VTEC").

99. All Class Vehicles were manufactured with an external coolant passage located where the engine's cylinder head attaches to the engine block.

### A. History of Honda's 1.5L Engine

100. In 1984, Honda introduced the D-series 1.5L naturally-aspirated engine ("D15") for production in Honda-brand vehicles. Honda designed, manufactured, tested, and sold vehicles equipped with several variants of the D15 engine until it was discontinued in 2005.

101. Like the Class Vehicles' Engines, the Honda vehicles equipped with the D15 engines suffered from head gasket failures which caused engine coolant to leak through the cylinder head surface into the adjacent combustion chambers, leading to engine overheating and engine damage.[2]

102. On November 10, 1997, Honda acknowledged the defect in the D15 engines when it released a technical service bulletin, TSB 97-047, which covered model year 1988-1995 Honda Civic vehicles.[3]

---

[2] *See* Exhibit A, TSB 97-047, dated November 10, 1997.

[3] *Id.*



BLOOD HURST & O' REARDON, LLP

103. In TSB 97-047, Honda explained "[the] head gasket leaks oil externally or allows coolant into the combustion chambers." *Id.* Honda's countermeasure to the D15 engine defect was a redesign of the cylinder head gasket and head bolts. *Id.*

104. Beginning in 2001, Honda introduced the successor to the D15 engine family, the L-Series 1.5L naturally-aspirated engine ("NA-L15").

105. In 2013, Honda released two new variants of the NA-L15 engine, the L15B and L15C, which featured a dual overhead camshaft ("DOHC") and variable timing control ("VTC"), and a new technology known as the "intelligent Variable Valve Timing and Lift Electronic Control," or "i-VTEC."

106. The i-VTEC is intended to optimize performance and fuel efficiency by dynamically adjusting the timing and lift of the engine's valves based on driving conditions.

107. However, like its D15 engines, Honda's L15B and L15C engines were plagued with issues from the start of production, including head gasket failure and VTC actuator failure, among other things.

108. Hundreds of owners and lessees of Honda vehicles equipped with the L15B, L15C and D15 engines have filed complaints with the National Highway Traffic Safety Administration ("NHTSA") and online concerning these failures.

**B. History of Honda's 2.0L Engine**

109. For the 1997 model year, Honda introduced the B2B0 2.0L in its first-generation Honda CR-V. The key features of the engine included a Duel Overhead Camshaft ("DOHC") and a Variable Valve Timing and Lift Electronic Control ("VTEC").

110. For the 2000 model year, Honda released the redesigned B20Z engine, which included dome shaped pistons, as well as an intake manifold that utilized a flatter resonator box. These design changes worked to increase horsepower and torque compared to the B20B engine.

111. In 2001, Honda released the new K-Series engine line, which continued to feature DOHC and i-VTEC technology.

112. The first engine from the K-Series line was the K20A engines with a 2.0L displacement as part of the Japanese market Honda Integra Type R.

113. In 2002, Honda introduced the K20Z1 engines with a 2.0L displacement as part of the North American market Acura RSX Type S. It also included the Honda Civic Type R sold in Japan.

114. In 2006, Honda released the K20Z3 engine with a 2.0L displacement as part of the North American Market Honda Civic Si.

**C. The Engine in the Class Vehicles**

115. In 2016, Honda debuted in the U.S. market the Engines, which feature a single-scroll turbocharger, DOHC cylinder head, and dual-VTC.

116. According to Honda, design changes made the Engines significantly different to the previous engines that were plagued with problems.

117. For example, the application of the dual VTC and single-scroll turbocharger enabled the engines to provide greater torque while possessing a smaller displacement than naturally aspirated engines.[4]

118. As part of the design changes, the Engines contain shallow-dish pistons, which consist of a curved surface and an upslope surface.[5]

119. These shallow-dish pistons work to produce double the kinetic energy compared to a naturally aspirated engine.[6]

120. By using a wide overlap period for the intake and exhaust valves, residual gas is scavenged from the cylinder and funneled to the exhaust system.[7] The

[4] Exhibit B (Honda R&D Technical Paper)
[5] *Id.*
[6] *Id.*
[7] *Id.*



BLOOD HURST & O' REARDON, LLP

flow of the scavenged gas works to increase the turbine speed of the engines.[8]

121. By utilizing the wide overlap period, the cylinder is allowed to fill more air charge and works to reduce knocking.[9]

122. These design changes resulted in the 1.5-liter engine producing a torque output that is about 30% higher than that of the previous NA-L15 engine design.[10]

123. For the 2.0-liter engine, these design changes worked to achieve a 50% increase in horsepower and a 100% increase in torque.[11]

**D. The Engine Defect**

124. The Class Vehicles suffer from a dangerous defect, placing Plaintiffs and Class Members, as well as others on the road, at an increased risk of severe injury or even death.

125. High compression, heat mitigation, and engine operating temperatures are critical concerns when designing and manufacturing an internal combustion engine.

126. Excessive engine and cylinder pressure can cause pre-ignition, pre-detonation, and engine knocking, among other things, which damages the internal engine components, engine seals, including the head gasket, and can lead to catastrophic engine failure.

127. On information and belief, the Engine Defect results from the design and/or manufacturing of the engine block and cylinder head, including use of an inadequate head gasket or other sealing compounds or characteristics on the cylinder head. This design and/or manufacturing method includes an external coolant passageway at the point where the engine's cylinder head attaches to the engine block, as seen below, circled for ease of view:

---

[8] *Id.*
[9] *Id.*
[10] Exhibit C (Honda SAE Technical Paper).
[11] *Id.*



BLOOD HURST & O' REARDON, LLP
00226660



128. The external passageway is intended to allow coolant, or antifreeze, to flow so that the Engine does not overheat, and the head gasket stays lubricated. As the coolant circulates, heat is transferred from the engine block to the liquid coolant. The liquid coolant then circulates to the radiator, where it is cooled and recirculated throughout the engine.

129. The external passageway design is not typical. In a typical, non-defective engine, liquid coolant circulates through veins or passageways inside the engine block and cylinder head to keep the engine cool and prevent overheating.

130. Proper placement and design of the coolant passageways is critical for efficient heat transfer and the overall health of the engine.

131. Poorly placed coolant channels can create "hot spots" within the engine, increasing wear and tear of components, such as the pistons, cylinder heads, turbochargers, and head gaskets.

132. The location of the external passageway on the engine block for the Class Vehicles is defective in that it fails to properly mitigate engine heat, increasing wear and tear of the engine and other components.

133. The external passageway design in the Class Vehicles is defective for several reasons. First, the head gasket relies on a tight, even seal between the cylinder head and the engine block to contain the combustion pressure. The external

passageway creates a space between where the engine's cylinder head attaches to the engine block, reducing the sealing surface and making the gasket vulnerable and less able to withstand the combustion force.

134. Second, because of the space created by the external passageway, the high pressure is no longer distributed evenly across the gasket surface. Instead, it becomes concentrated on the edges, creating points of stress.

135. Third, over time, the constant pressure and temperature fluctuations cause the gasket material to deform and weaken, especially at the points of stress.

136. Fourth, once the pressure exceeds the gasket's ability to hold the seal, the gasket will rupture, causing leakage of coolant, oil, and combustion gases.

137. Finally, the external passageway experiences rapid pressure changes. When the pressure falls, the coolant begins to vaporize forming vapor bubbles. Once the vapor bubbles flow to regions of high pressure, they rapidly collapse or implode (Cavitation). This repeated implosion erodes surrounding surfaces, including the head gasket sealant.

138. Similarly, without proper heat mitigation and temperature control, the engine will overheat and cause critical damage to internal components and engine failure.

139. Additionally, the liquid coolant is pressurized as it circulates, so all mating surfaces must be properly sealed to prevent liquid coolant from externally or internally leaking, causing the Engines to overheat, damage internal components, and lead to catastrophic Engine damage.

140. The Class Vehicles, however, fail to properly seal and contain the liquid coolant.

141. In Class Vehicles, the coolant leaches through and collects in the grooves on the cylinder head.

142. The coolant then degrades the Engine's gasket, eventually resulting in the coolant leaking into the Engine's cylinders.

143. The coolant leaks cause three related problems. First, due to the leaking, insufficient coolant remains in the Engine to properly cool it, which results in the engine overheating. The Engine overheating can then cause catastrophic damage, including cracked cylinder heads from the excessive heat.

144. Engine overheating can also warp other internal components, such as pistons. In addition, when an overheated Engine reaches a certain degree, the overheating causes a loss of oil viscosity, which may lead to complete Engine seizure, and in some instances, engine fire.

145. Second, coolant leaking into cylinders can cause the Engine to misfire and lose motive power.

146. Third, coolant that enters the cylinders can mix with the oil on the cylinder walls, causing oil dilution and/or contamination, which in turn causes corrosion and excessive wear on bearings and other internal Engine surfaces.

147. The increased pressurization and overheating also result in the head gasket's bolts stretching beyond their design intent. Consequently, the bolts lose their ability to provide consistent clamping force.

148. Reduced clamping force allows the head gasket to move and/or fail, resulting in combustion gases escaping, coolant leaking into the cylinder or oil passages, and oil leaking out of the engine.

149. These failure modes can occur at low mileage and can cause catastrophic failure within warranty.

150. The Engine Defect creates a serious safety risk, because it renders the Class Vehicles unexpectedly inoperable without warning, taking control of the vehicle away from the driver, and preventing them from moving out of the way of oncoming danger or from moving with the flow of traffic.

151. Because of the grave risks the Engine Defect poses, the Class vehicles are not fit for their ordinary purpose and do not pass without objection in the trade, rendering them substantially less drivable, useable, safe, and valuable. This is

especially true for the Class Vehicles, which were marketed as safe and reliable family vehicles.

152. Honda has acknowledged the Engine Defect through Manufacturer Communications to Honda dealerships first issued in 2017,[12] as well as cheap design changes, including changes to the head gasket, made by Honda in 2020 as an attempt to eliminate the Engine Defect.[13] However, these design changes failed to address and remedy the Engine Defect. And while Honda knew of the Defect, it failed to inform Plaintiffs and other Class Members.

### E. Honda's Knowledge of the Engine Defect and Associated Safety Risks

153. Honda fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and Class Members the Engine Defect in the Class Vehicles, even though Honda knew or should have known of the design and/or manufacturing defects in the Class Vehicles.

154. Honda became aware of the Engine Defect through sources not available to Plaintiffs and the other members of the Class, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Honda's network of dealers and directly to Honda, aggregate warranty data compiled from Honda's network of dealers, testing conducted by Honda in response to consumer complaints, repair order and parts data received by Honda from Honda's network of dealers and suppliers, its investigation and field analysis of the Engine Defect; and its investigation and root cause analysis of failures in pre-Class Vehicles.

155. Despite its exclusive, actual knowledge, Honda has not recalled the Class Vehicles or provided an adequate remedy for Plaintiffs and all other Class Members.

---

12 *See* Exhibits D-I.

13 https://www.hondapartsnow.com/genuine/honda~gasket~cylinder~head~nippon~leakless~12251-6a0-a01.html

**1. Pre-Release Testing**

156. Honda knew or should have known about the Engine Defect from the testing performed on the Engines and its' components. Prior to the sale of any of the Class Vehicles, Honda–like any other reasonable Original Equipment Manufacturer ("OEM") seeking to manufacture and sell vehicles on the U.S. market–completed a multitude of analyses and testing that exposed the existence of the Engine Defect.

157. Honda and its suppliers, perform various pre-production testing on new vehicle components, including most notably Failure Modes and Effects Analysis ("FMEA") and Design Validation Plan and Report ("DVP&R").

158. Honda and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated that the relevant systems or components in the Class Vehicles would lead to failure of the Engines.

159. FMEA tests methods or modes by which a particular component might fail. It examines the design of each component, the assembly of the part, and whether use in various manners would cause the part or system to fail. For example, in testing the systems at issue here, FMEA testing would explore, among other things, how and under what conditions the Engines and their components could fail, how likely failure was under different conditions, and how likely each condition tested was to occur.

160. The purpose of the FMEA is to define, based on known and established engineering facts like those asserted by Defendants, potential risks of failures and rank them by severity, likelihood and ability to detect failure. Any conditions resulting in failure, like those associated with the Engine Defect would result in a "high risk" priority and draw additional and more extensive analysis and validation testing during the FMEA and DVP&R phases. Given the reports of Engine failures after sale, these processes were designed to show the various modes of failure caused by the Engine Defect and confirm what Defendants already knew about the Engine Defect.

161. The DVP&R phase includes an extensive battery of tests and other work necessary to validate the robustness of any design and includes three basic types of testing: bench scale, dynamometer, and vehicle/field testing. This testing is discussed below.

162. Bench scale testing is component-specific and establishes a strict set of specifications and guidelines to ensure that the component will operate reliably and durably in foreseeable operating conditions. During this phase of testing, Defendants' Engine was "bench tested," that is, set up on various machinery to simulate certain operating extremities and conditions to confirm whether it meets the necessary specifications and guidelines set by the supplier in coordination with Defendants. Discovery is expected to reveal that Defendants received the detailed results of the bench testing and resulting Technical Control Documents (TCDs) which outline the operating limitations of Defendants' Engine along with the potential risks associated with installation in the Class Vehicles, including the Engine Defect. Similarly, discovery is expected to show that bench testing of the Engines confirmed what Defendants already knew about its design choice or its workmanship and materials—that the Engines fail to operate as intended and prematurely fails.

163. Dynamometer testing is one of the most important types of testing to ensure durability and performance of the powertrain and its components. In the dynamometer test, the powertrain operates under extreme conditions such as maximum temperatures, RPMs, or excessive vibration. Dynamometer testing is intended to demonstrate powertrain robustness and reveal necessary improvements or flaws, such as the Engine Defect. Discovery is expected to confirm that dynamometer testing revealed the Engines were poorly designed and manufactured, suffered from premature degradation, underperformance, and, ultimately, catastrophic failure.

164. Honda and its suppliers also performed computer and real-world simulations of the systems, including in extreme conditions, to confirm they are meeting the design goals. Honda tested the Engines in actual vehicles, both prototype

vehicles and pre-production line vehicles. In these tests, vehicles are driven through a full range of conditions and extremities that are encountered once a vehicle is sold to the public. These vehicle-specific development tests include mapping extreme operating conditions, which are the kinds of modes that manifest the Engine Defect.

165. Through the rigors of these three phases of DVP&R testing, Defendants' Engines were exposed repeatedly to conditions that cause the Engine Defect to manifest.

166. Defendants admit they perform extensive pre-release testing of the Class Vehicles before they are sold.[14]

167. Among other things, Honda's testing demonstrated (1) the sealing surface necessary for a Class Vehicle's head gasket to operate as designed, (2) the effect the external passageway had on the head gasket's sealing surface, (3) the deficiency in the external passageway's ability to reduce Engine heat, (4) the gasket's inability to properly seal the combustion pressure, and (5) the damage to the Class Vehicles as the result of head gasket failure.

168. During this testing, Honda also learned that the Class Vehicles' Engines grossly underperform and suffer internal component damage and failure. However, due to the costs of redesigning and fixing the Engines, Honda opted to conceal the Engine Defect.

169. Honda knew or should have known that the Engine Defect was material to owners or lessees of the Class Vehicles and that Plaintiffs and Class Members could not reasonably discover the Engine Defect on their own prior to purchasing or leasing the Class Vehicles.

170. Honda had and continues to have a duty to fully disclose the true nature of the Engine Defect to Plaintiffs and Class Members, among other reasons, because the Engine Defect poses an unreasonable safety hazard; because Honda had and has

---

[14] https://hondainamerica.com/news/honda-proving-center-returns-operation/

exclusive knowledge or access to material facts about the Class Vehicles' Engines that were and are not known to or reasonably discoverable by Plaintiffs and the other members of the Class; and because Honda has actively concealed the Engine Defect from its customers at the time of purchase or repair and thereafter.

171. Specifically, Honda (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Engine Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their Engines were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and actively concealed the fact that the Class Vehicles and their Engines were defective, despite the fact that Honda learned of the Engine Defect before it placed the Class Vehicles in the stream of commerce.

172. The Engine Defect and its associated safety risks were concealed and actively suppressed in order to protect Honda's corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and brand disengagement. Consumers were misled into believing their Class Vehicles had different qualities than what they purchased or leased, and as a result, were deprived of economic value, the benefit of their bargain, and overpaid for their Class Vehicles.

173. At all relevant times, in promotional materials, advertisements, and other representations, Honda and its authorized Dealers maintained that the Class Vehicles were safe, reliable, and made no reference to the Engine Defect. Honda also engaged in a long-term advertising and branding campaign as a reliable vehicle manufacturer. Plaintiffs and Class Members, directly, and indirectly, were exposed to, saw or heard such promotional materials and advertisements prior to purchasing or leasing the Class Vehicles and had the reasonable expectation that their Class Vehicle would be safe and reliable. Indeed, these misleading representations about the Class Vehicles'

reliability and safety were material to Plaintiffs' and Class Members' ultimate decision to purchase or lease the Class Vehicles.

174. Notwithstanding Honda's superior and exclusive knowledge of the Engine Defect, it failed to disclose the Engine Defect to Plaintiffs and Class Members at the time of purchase or lease of the Class Vehicles and made no mention of the Engine Defect in its advertisements, promotional materials, and other representations.

**2. Consumer Complaints**

175. Federal law requires Honda to monitor defects that can cause a safety issue and report them within five (5) days to NHTSA. Therefore, Honda regularly monitors NHTSA complaints to meet reporting requirements under federal law. Honda, therefore, has knowledge of the Engine Defect due to the numerous consumer complaints, such as those made to NHTSA, as well as by other means.

176. Honda has admitted it routinely monitors these data sources to monitor product performance. *See In re Honda Idle Stop Litigation*, 22-cv-04252-MCS-SK (C.D. Cal.), Doc. No. 137-1, Page ID #:4744.

177. Consumers who purchased or leased Class Vehicles from Honda, as well as owners and lessees of Honda vehicles with earlier but similar engine designs, have filed a significant number of complaints with the National Highway Traffic Safety Administration ("NHTSA"), reporting and detailing the Engine Defect.

178. Honda knew or should have known about the Engine Defect and its associated risks through the numerous consumer complaints filed with NHTSA as early as 2016. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

179. The following example complaints[15] filed by consumers with NHTSA demonstrate that the Engine Defect is a widespread safety hazard that plagued Honda's vehicles for years and continues to plague the Class Vehicles:

---

[15] All NHTSA complaints included in this Complaint are complete and verbatim copies pulled directly from NHTSA's website.



BLOOD HURST & O' REARDON, LLP

180. On May 18, 2025, the owner of a 2021 Honda CR-V submitted the following complaint to NHTSA:[16]

> Head gasket failure. 79,600 miles. Car consumes coolant. Coolant is entering the firing ring when car sits after being driven a distance of 5 miles or more and sits for about 8 hours, vehicle starts with a misfire and makes a small amount of white sweet smoke out of the exhaust pipes even in 85 degree weather. Car smooths itself out after 10-30 seconds. No OBDII or Honda specific codes. Spark plugs, ignition coils, and spark plugs again since 75K. Over $2,000 into this car in repairs. Refilled coolant reservoir 3 times since April 8TH (3 full jugs of Peak Asian blue from Advanced Auto Parts). I want justice for this car and other Honda 1.5T vehicle owners as many of them have this happen at the 80K mark and they're being quoted $10K for an engine and $5K for a head gasket. There are several people with Accords, Civics, CR-Vs equipped with the 1.5T engine that have coolant leaking into one cylinder. Oil looks fine and not milky. And besides the coolant being low, it looks fine (blue/aqua). Only when the car sits. Car was brought to Rivera Honda in Port Jeff and they couldn't find any issues. Car is consuming coolant. No leaks. It's being burned when you start the car after it sits. Gushing liquid noise when car starts or with idle engine stop activated and car restarts.Design flaws on cylinder head has grooves that allow coolant to flow on top of the head to cool it. Failure point according to a Honda mechanic on YouTube. Second flaw is poorly designed head bolts that are too thin and are brittle, not making a good seal as the vehicle ages. Parts are not expensive at all, but the man hours needed to replace this are the killer. 4.5 years old with 80K, it's Honda. It's supposed to run forever. Not die under 100K. I would expect this problem after 250K or when the car is over 10 years old. My Godmother had a 1998 Accord that she had for over 20 years and it only needed a fuel pump as a major repair. A testament to Honda's rock solid reliability. What happened?

181. On April 18, 2025, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[17]

> Alleged Defect:The defect is described as the engines' inability to handle the increased heat and compression of a turbocharger, causing coolant leakage and damage to the engine's head gasket..

[16] NHTSA ID: 11661717.

[17] NHTSA ID: 11655368.



BLOOD HURST & O' REARDON, LLP
00226660

182. On April 4, 2025, the owner of a 2020 Honda CR-V submitted the following complaint to NHTSA:[18]

> Sudden engine failure while driving on highway with immediate loss of power. Engine failure was due to blown head gasket from failure in sealed coolant system. Engine failure occurred prematurely at 84k miles. Honda allegedly is aware of this failure in their system, and has not addressed it. Safety concern due to sudden loss of power while driving in areas with speeds at excess of 60 mph, no warning prior to failure.

183. On March 31, 2025, the owner of a 2022 Honda CR-V submitted the following complaint to NHTSA:[19]

> Hi, I've owned this vehicle brand new, 21 miles. I purchased from the dealership. It now has a blown head gasket at 85 k miles. I've spoken to 3 dealerships that have said this is a common problem. I obviously do a lot of driving early morning and late night. This could have been a big safety issue in the dark. I've done all my services on time and even earlier than needed. I hope you can do research on this. Thank You, [XXX] INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

184. On March 26, 2025, the owner of a 2021 Honda Accord submitted the following complaint to NHTSA:[20]

> The contact owns a 2021 Honda Accord. The contact stated that while her son was driving at an undisclosed speed, the vehicle experienced a loss of automotive power and stalled. The vehicle was towed to the local dealer who diagnosed the vehicle and determined that the head gasket was blown. The vehicle was not repaired. The manufacturer was not yet contacted. The failure mileage was unknown.

185. On March 14, 2025, the owner of a 2022 Honda Accord submitted the following complaint to NHTSA:[21]

> Head gasket. Diagnosis gave by Honda

---

[18] NHTSA ID: 11652719.

[19] NHTSA ID: 11651808.

[20] NHTSA ID: 11650804.

[21] NHTSA ID: 11648406.

186. On March 1, 2025, the owner of a 2021 Honda Accord submitted the following complaint to NHTSA:[22]

> Diagnosed with blown head gasket. No warning signs or lights . Car shut off and every light on the dash came on. It's happening a lot with accords!

187. On February 8, 2025, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[23]

> Component that failed was the head gasket. Willing to have vehicle inspected. However this incident occurred roughly 7 months ago at 125k miles. Safety was put at risk due to engine overheating which could've caused a fire. I haven't asked the dealer if they've seen it before however this issue is easy to find on forums for this vehicle. The vehicle was only inspected by the dealer who repaired it, I was told by them they had to send off some part of my engine to honda to ensure it wasn't warped before repairing. The ridiculous part was the only warning I received in my car was engine temp high if you ask me such a major failure should cause the check engine light to come one. I had no other warnings than the temp warning. My vehicle doesn't even have a Guage to display the engine temp. To ensure the listed vin shows the correct model I drive a 2019 honda accord hybrid ex with 133,500 miles.

188. On January 29, 2025, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[24]

> The contact owns a 2020 Honda Accord. The contact stated while driving at various speeds, the vehicle lost motive power. The check engine warning light and other unknown warning lights were illuminated. Additionally, messages indicating an emission and TPMS failure, and other unknown messages were displayed. The contact was able to pull over to the side of the road. The vehicle was able to be restarted. The contact was able to continue driving; however, the failure recurred after driving for several miles, causing the contact to pull over to the side of the road several times. The contact stated that a mobile mechanic had replaced the spark plugs and the ignition coils several times; however, the failure persisted. The vehicle was taken to the dealer,

---

[22] NHTSA ID: 11645693.

[23] NHTSA ID: 11641523.

[24] NHTSA ID: 11639437.

> where it was diagnosed that the head gasket had failed and needed to be replaced. The vehicle was not repaired. Additionally, the contact stated that the passenger's side air bag warning light was illuminated intermittently. The vehicle was not diagnosed or repaired. The manufacturer was not notified of the failure. The failure mileage was unknown.

189. On January 9, 2025, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[25]

> My vehicle has 101,000 miles and the head gasket has failed and I could provide the vehicle for inspection upon request. The problem has been confirmed by a Honda Master Mechanic that the head gasket has failed. The failure of the gasket caused the vehicle to cut power of the vehicle while driving on the freeway. A warning on the dash came up that stated, that the vehicle is limiting power to the engine.

190. On January 5, 2025, the owner of a 2021 Honda Accord submitted the following complaint to NHTSA:[26]

> Head gasket blown before 50k miles even at 30k miles ive seen it happen to my friend!

191. On December 6, 2024, the owner of a 2022 Honda Accord submitted the following complaint to NHTSA:[27]

> Blow head gasket

192. On November 21, 2024, the owner of a 2020 Acura RDX submitted the following complaint to NHTSA:[28]

> Engine judders at 2k rpm around 60 mph. Car has 92k miles with timely documented service maintenance. Took car to the dealership and said there's a head gasket leak on cylinder 4 and needs to be replaced. Contacted American Honda about the issue and they said they cannot

---

[25] NHTSA ID: 11634997.
[26] NHTSA ID: 11634205.
[27] NHTSA ID: 11629263.
[28] NHTSA ID: 11626720.

> cover the repair cost. They also don't have the replacement part for the fuel pump recall for a long time as well.

193. On November 11, 2024, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[29]

> Engine light came on. First time this has happened. Took car immediately to Honda Dealer for inspection of engine light. Was informed that the car had a blown head gasket. Car only had 116000 miles. Car was taken to same dealer where purchased, and serviced constantly. Not once were we notified of any issue with the engine.

194. On October 10, 2024, the owner of a 2021 Honda Accord submitted the following complaint to NHTSA:[30]

> My car has 79700 miles and starter shaking vigorously while on the freeway. Took it to the Honda dealership and I have a blown headgasket. After reading the [XXX] forums this is a ridiculously common problem with these cars around 45-90k miles. Honda is saying it's not under warranty and it's a $5400 fix for me. With so many cars with the same 10th generation engine having blown head gaskets below 100k miles this is an problem and a safety issue. Honda needs to fix these issues for their consumers. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

195. On September 28, 2024, the owner of a 2021 Honda CR-V submitted the following complaint to NHTSA:[31]

> 1 weeks ago the crv over heated once, shut the car off gave it 5min turned it back on and got it home no further issue, never over heated again Then on Monday the check engine light started flashing took to a shop they said it was due to spark plugs and ignition coils. The very next day flashed again, took back to shop they said it was my head gasket, took to a second shop and they confirmed that it was a head gasket but most likely needed the entire engine replaced at over $17,0000 The car is only 3 years old with 145k miles and already needs a new engine.

---

[29] NHTSA ID: 11624504.

[30] NHTSA ID: 11619138.

[31] NHTSA ID: 11617030.

196. On September 26, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[32]

> My head gasket went out while I was driving down the road at around 68425 miles. The result was that the car threw a bunch of error codes and went into limp mode while on the highway. I was fortunately able to pull off into a parking lot due to low traffic at that time of day but it was a major road that is full of vehicles during a busy time of day. This was a safety issue because my car effectively lost power and I was stuck coasting on a road where traffic regularly travels between 45-50+ mph. The head gasket failure was confirmed by the local Honda dealer and was replaced under warranty (certified pre-owned).

197. On August 13, 2024, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[33]

> Rough start then temperature fluctuates. Coolant is disappearing cause a head gasket problem. This has been known for the 2018-2020 yrs Accord.

198. On August 5, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[34]

> Blown head gasket confirmed by dealer.

199. On August 4, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[35]

> Bought the vehicle in 2022 with 90k miles on it. Started experience engine issues shortly after. Engine light and ALL the dash lights came on. Changed spark plugs 4x and coils replaced fuel injectors over the years. Still the lights and engine light comes on. Turns out I have a blown head gasket at just 130k miles. Did routine maintenance on it and changed water pump . I've never had this many issues with a car and I'm quiete upset. The years of head ache is never ending.

---

32 NHTSA ID: 11614854.

33 NHTSA ID: 11608357.

34 NHTSA ID: 11606383.

35 NHTSA ID: 11606322.

200. On July 12, 2024, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[36]

> The head gasket on the engine has blown at only 94,000 miles. Car overheated on the side of the freeway and I took it to the dealership. Dealer confirmed that the head gasket was leaking. Check engine light and a temp warning came on as the car overheated.

201. On July 8, 2024, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[37]

> The head gasket on the engine has blown at only 94,000 miles. Car overheated on the side of the freeway and I took it to the dealership. Dealer confirmed that the head gasket was leaking. Check engine light and a temp warning came on as the car overheated.

202. On July 8, 2024, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[38]

> During medium acceleration the vehicle engine lost power and all the instrument panel warnings went off. Dealership said a blow head gasket. There are many threads online saying that there needs to be something done because the Honda 1.5 turbo motors are blowing head gaskets prematurely under 100k miles. Mine 2020 Accord has 108k and has been driven with care as I'm a middle aged male commuting to and from work with the car. Some sort of investigation needs to be done to show there is either a design flaw or a gasket flaw.

203. On July 4, 2024, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[39]

> During medium acceleration the vehicle engine lost power and all the instrument panel warnings went off. Dealership said a blow head gasket. There are many threads online saying that there needs to be something done because the Honda 1.5 turbo motors are blowing head gaskets prematurely under 100k miles. Mine 2020 Accord has 108k and has been driven with care as I'm a middle aged male commuting to and from work

---

[36] NHTSA ID: 11601606.

[37] NHTSA ID: 11601606.

[38] NHTSA ID: 11600120.

[39] NHTSA ID: 11600120.



BLOOD HURST & O' REARDON, LLP

00226660

> with the car. Some sort of investigation needs to be done to show there is either a design flaw or a gasket flaw.

204. On July 4, 2024 the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[40]

> My vehicle head engine gasket blow while driving on the highway. I was on the far left side of the highway near brick side wall and had to find a way to get to the right shoulder of the highway while in coming car passed by. I'm just upset cause I kept telling Honda dealership something was wrong with my engine every time I went in for a oil change for the past 2 years and they ignored my concern and told me nothing was wrong. I just can't believe Honda a trusted automotive company would have this type of issue without having a recall available for their customers. And I read into the issue and I'm not the only person with this issue. That's not right at all. They need to do better.

205. On July 1, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[41]

> Engine overheated and turns out we have a blown head gasket. The problem escalated quickly from and "your engine may be warm" messages to "Do not drive!" messages. We tried to stop and cool it off when that message happened. To me the safety issue comes with the experience of needing to urgently find a place to stop while driving on a busy road (interstate for us) so the engine doesn't get much worse. Car is currently at a Honda dealer to assess the damage to the engine.

206. On June 20, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[42]

> Blown Head Gasket.

207. On June 20, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[43]

---

[40] NHTSA ID: 11598856.
[41] NHTSA ID: 11598856.
[42] NHTSA ID: 11595432.
[43] NHTSA ID: 11595585.



BLOOD HURST & O' REARDON, LLP
00226660

> Head gasket and fuel injector. Causing stalling of the vehicle. Over heating. Have almost been hit with my kids in the car from stalling. Honda has confirmed this and the car has only 125k miles. This is COMMON in this car and should be recalled before someone is killed. In this economy who can afford 5500 dollars on a car that isn't old to fix? I have driven all my past vehicles into 200k miles and never had these issues and have taken much better care of this car.

208. On June 5, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[44]

> I got a blown head gasket to cynlinder #3 at under 100k miles. I maintain it regularly as needed by use of the maintenance minder. Never got any indication of engine troubles before. On doing some research this seems to be a common problem for this make and model and seems to be a possible defect. The repair was $4300 to repair the head gasket.

209. On June 4, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[45]

> Drove to work, about 35 miles. Few hours later went to leave to get a cup of coffee, started car and ALL lights came on dash and seems like every feature cycled through indicated nonfunctional. Drove to dealership, head gasket leak and piston misfiring, $4200. Car is a 2018 Honda Accord EX-L with 62000 miles. Seems strange to have such an extensive issue with a honda with such low miles. Can you investigate. Thanks.

210. On June 4, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[46]

> Blown head gasket due to the new 1.5L engine Honda started making on the 2018 models.

211. On June 2, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[47]

---

[44] NHTSA ID: 11592678.

[45] NHTSA ID: 11593633.

[46] NHTSA ID: 11592317.

[47] NHTSA ID: 11592014.

Head Gasket Failure diagnosed by Honda city in New York. The purpose of the diagnostic was to address what I believed to be issues related to the ongoing Fuel Pump recall, as discussed with an American Honda representative prior to my visit. The symptoms I had been experiencing included intermittent stalling or loss of power, what prompted me to reach out immediately was an instance on a highway where the engine lost all power, prompting us to pull over to the side of the road, This could have been a much worse outcome. Additionally, I have noticed occasional trembling upon startup. Per the Service department the conclusion of the diagnostic was that the coolant was low due to washing the piston heads and cylinder walls and ultimately the head gasket needed to be replaced along with spark plugs.The total costs for these services amount to about $4,800. To provide further context, the coolant was last replaced on [XXX] 2024. The first issues began to arise in mid-February when the digital gauge displayed at least 8 warnings across various systems. [XXX], 2024 the car was brought in for more maintenance and further investigation into the warnings. Nothing came about here as the issue couldn't be reproduced and no action was taken. I feel as though there was nothing more I could have done to prevent this situation. The car has a pristine maintenance record and has just over 42,000 miles after a little over 5 years of ownership , an average of 15-20 miles a day. After researching on my own, Ive found this to be much more common issue for the 2018 1.5 accords along with other models. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

212. On May 23, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[48]

My 2018 Honda Accord began malfunctioning on [XXX]. It completely stalled out and all of the warning lights came on. The vehicle was being driven and began to shudder upon acceleration at just 15 mph. The vehicle ended up seizing and lost all acceleration capabilities. The vehicle was able to be pulled over at idle speed and had trouble starting. once I got the car to start, I was able to drive the vehicle into a safe parking lot but only at idle speed as the acceleration was not functioning. I had received the fuel pump recall and had the car towed to Brandon Honda in Brandon FL, and they determined it was not a fuel pump failure but a blown head gasket. I also received a second opinion that confirmed

[48] NHTSA ID: 11584701.

> this diagnosis and determined the issue to be the blown head gasket causing coolant to mix with my oil and leak into spark plugs causing spark plug 3 to fail as well. Upon replacement of the spark plug, the car functions once again with acceleration capabilities, however, to prevent any further damage, I had the car towed back to my place of residence. Upon further investigation, I am finding more people experiencing this issue with their new Honda Accords as well. The head gasket should not fail this early on in owning this vehicle especially being the only owner of this vehicle and only 130k miles. I have always kept up with coolant levels, and oil changes, and used the recommended octane by Honda, 87. Repair still has not been made as I am exploring all of my options, however, if this malfunction had happened on the interstate, it could have been fatal. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

213. On May 14, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[49]

> All warning systems triggered, repeatedly, over the past year. Honda dealership misdiagnosed as a fuel injector. Had fuel injector replaced, but same issue occurred and this time all warnings came on and vehicle lost power on highway with my baby daughter inside. So, after spending thousands attempting to resolve the issue, I towed again to Honda and it was correctly diagnosed as a failed head gasket requiring $5.5K to repair. Service advisor said he's seen "many of these" recently. Called around Tampa and all mechanics advise (consistent with numerous complaints online car communities) failed head gasket is a known and common safety issue (to the extent that parts are on backorder as a result of repairs). Called American Honda Corporation and they led me to believe they would repair, but after an hour of wasting my time, and repeated requests to hold so agent could speak with supervisor, agent then said repeatedly "there is nothing we can do for you." This abject safety failure and demonstrated bad faith should not be allowed by regulators who have a duty to mandate that auto manufacturers do the right thing and issue safety recalls for known issues such as the head gasket failure I have experienced.

---

[49] NHTSA ID: 11588703.

214. On May 2, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[50]

> Engine stall while driving, and blown engine gasket.

215. On April 18, 2024, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[51]

> Head Gasket developed holes at 70,000 miles despite all recommended maintenance completed. This can cause serious engine damage which can lead to multiple safety issues.

216. On April 14, 2024, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[52]

> I was driving my Honda CRV 2017 on I-65 in Birmingham - Montgomery area in Alabama in March 2024 and suddenly in the middle of the busy highway the vehicle stalled and wouldn't drive even after stepping on the accelerator a little harder. I then turned on my emergency lights to signal to the behind vehicles that I have and emergency situation became I was in the middle of a busy highway and the vehicle simply wouldn't drive. I managed to pull aside of the highway and turned the engine off because I didn't know what the issue was. After a few minutes I started the vehicle again and drove a few miles and the vehicle stalled again. After a couple of repeated cycle, I got the vehicle to a nearby Honda dealership for diagnostic testing which later revealed that the fuel injectors, the head gasket, the turbo system etc were causing the vehicle to stall. The vehicle is currently not drivable and has since been with the Honda dealership as I am writing. With taxes, the dealership is charging me approximately $5000 USD to fix this problem, money that I cannot afford. Not knowing what to do, I did a brief research to see if anyone else has experienced this issue before and I found out in the consumer report that other drivers have actually experienced exactly the same issue that happened to my vehicle. I currently do not have any additional vehicle for commuting and I am forced to use rented vehicles with the rental cost accumulating on the daily basis while my vehicle remains with the dealership. I am therefore writing this notification for Honda to look into this potentially risk safety incidence and help Honda CRV owners

---

[50] NHTSA ID: 11586583.

[51] NHTSA ID: 11583859.

[52] NHTSA ID: 11582838.

> and myself get this problem fixed because such experience doesn't boost consumer confidence for both current and future Honda CRV owners. Thanks

217. On March 13, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[53]

> Blown head gasket.Car is hesitating/ jerking. Dealership wants 7k to get it fixed.

218. On March 8, 2024, the owner of a2018 Honda Accord submitted the following complaint to NHTSA:[54]

> Head Gasket Failure.

219. On February 22, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[55]

> Cylinder head gasket and cylinders misfire; also loosing coolant.

220. On February 9, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[56]

> This 1.5T has had alot of complaints about head gaskets going out. 50K miles i had it headgaskey went bad.

221. On January 30, 2024, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[57]

> While driving the car it began to spit and sputter and lost power to the point I had to pull out of traffic to the shoulder, stop, and turn hazard lights on. While there I turned the car off and restarted it. I began to enter back into traffic, got to about 10-15 mph and all of a sudden the car ran choppy and every light came on the dash displaying a problem with every function of the car. My husband works about a mile from where I was so I drove from where it happened to his workplace. From there the phone calls began to obtain a tow to the dealership. Diagnostic results said head

---

53 NHTSA ID: 11577121.

54 NHTSA ID: 11576269.

55 NHTSA ID: 115732892.

56 NHTSA ID: 11570935.

57 NHTSA ID: 11568906.



BLOOD HURST & O' REARDON, LLP

00226660

> gasket was leaking and coolant was fouling the spark plugs. Dealer quoted $5700 for repairs. (25 hours of labor). Around 86,000 miles (10 weeks ago) the same dealership replaced fuel injectors and spark plugs for $1700. Now the 2017 car is just under 90,000 miles.

222. On January 1, 2024, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[58]

> 2018 Honda Accord Touring 1.5T (CVT) 43,600 mi 12/27/2023 - Various warning messages over the course of previous 6 months -Started with a light vibration at cold startup, progressed to CEL flash and engine shut down -Vehicle brought to Honda dealership for a cold start misfire on cylinder 1 12/28/2023 -Vehicle diagnosed with leaking head gasket (cylinder 1) AND failing injectors on 2 and 4 -All repairs covered under Honda power train warranty Disappointed at a head gasket and injector failure at 43,600 mi on a vehicle that may have seen 3500RPM twice in its life.

223. On October 4, 2023, the owner of a 2021 Honda Accord submitted the following complaint to NHTSA:[59]

> 2021 Accord Hybrid Touring 2.0L with 51k miles. On 10/22/2023 the check engine light started flashing so I pulled over and noticed the engine was running rough so I shut it off. When I restarted it all was fine, no CEL, so I drove it to the dealership. They stated that there are no CEL codes found, so come pick it up. I told them that the CEL flashing was a major problem and I pulled a P0304 code. 2 days later they called and told me it had blow head gasket.

224. On October 19, 2023, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[60]

> The contact owns a 2017 Honda CR-V. The contact stated that while driving at approximately 50 MPH, the vehicle started losing motive power. The contact stated that several unknown warning lights were illuminated. The vehicle was steered to the side of the road and restarted. The vehicle was taken to a dealer where it was diagnosed that the head gasket needed to be replaced. The vehicle was repaired but the failure

---

[58] NHTSA ID: 11564284.

[59] NHTSA ID: 11549258.

[60] NHTSA ID: 11550829.

persisted. The manufacturer was notified of the failure. The failure mileage was 70,000.

225. On June 19, 2023, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[61]

> Week of April 11th, While driving the car, the vehicle would start to shake and the following warning messages came on as the vehicle would start to decelerate making us drift to the emergency lane avoid getting hit by an oncoming vehicles. The following messages came up on multiple occasions on the panel. (note, we could only select 3 options above so were not able select all of these) 1. Collision Mitigation System Problem 2. Adaptive Cruise Control Problem 3. Road Departure Mitigation System Problem 4. Electrical Parking Break Problem 5. Tire Pressure Monitor Problem 6. Power Steering System (EPS) Problem The car was inspected by Danbury Honda service department, who informed us that it was a blown head gasket. The car is a 2017 purchased in 2020 by Danbury Honda Dearlership. As we worked primarily from home for the last 3 years, the car was not driven that often and oil changes have been up to date. There have been no signs of leaking or overheating including the temperature gauge not showing any signs of overheating and remained in neutral or below temperature. The Danbury Honda service department could not explain how a blow head gasket was possible. We then proceeded to have it inspected by Danbury Brewster Service Department week of April 18th, who informed us that it was a spark plug issue. And there was no indication of a head gasket. After spark plug was repaired, the car was being driven with no issues and on May 4th, the incident above happened again (again no overheating or leaking). We went back to Honda Brewster who said it was a blown head gasket with no explanation as to how this as possible. We are attaching the service technician inspection report and photos. This has caused anxiety and stress where we are not safe driving the vehicle. Our daughter just recently obtained a license and, thankfully, this did not happen to her. We have been fans of hondas for many years and between us have owned 4 honda vehicles.

226. On June 7, 2023, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[62]

---

[61] NHTSA ID: 11527685.

[62] NHTSA ID: 11525856.

> My car is 5 years old with 72,000 miles and it now need a new head gasket. Mechanic said Honda is aware of this issue on this model car but my warranty is expired and this is costly fix for something the company is well aware of.

227. On December 20, 2022, the owner of a 2018 Honda Accord submitting the following complaint to NHTSA:[63]

> Hello, On 12/19/2022 when I started my 2018 Honda Accord EX 1.5L it started giving me all the warning lights at a time and suggested me see Honda dealer. I took it nearby Honda dealer and they diagnosed the issue and found that there is issue with fuel injector CODED PO301 CYLINDER 1 MISFIRE 1st - CLEARED CODES Upon rescanning - recorded multiple misfires on cylinder 2,swapped coils and plugs no change misfire did not follow. Failed Air Fuel Test – Step 1: Replace Fuel injectors with Fuel Pipe AND CHECK VALVE CLEARANCE (Valve Adjustment). And Honda dealer mentioned that it is not covered by warranty.

228. On December 13, 2022, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[64]

> Cylinder 2 misfire with check check engine light on and limp mode activated. Dealer diagnosis revealed a blown head gasket at 95,000 miles with coolant leaking into cylinder # 2 & 3. Vehicle always serviced on time and at purchasing dealer with no mods to vehicle.

229. On December 1, 2022, the owner of a 2021 Honda CR-V submitted the following complaint to NHTSA:[65]

> 2021 Honda CRV Hybrid. 11/9/22: When accelerating to merge onto a highway, moving at approximately 50 mph, the vehicle rapidly decelerated as driver tried to accelerate (went into limp mode), the check engine light came on and the engine made a continuous clattering sound. The vehicle would not go above 15 mph in 55-60 mph traffic. Driver put flashers on and drove 1/2 a mile to the first exit, lucky he could move to the right lane. Vehicle was driven 1.5 miles home at 15 mph and lower. Didn't drive car on 11/10/22. Car driven to dealership on 11/11/22

---

[63] NHTSA ID: 11498266.

[64] NHTSA ID: 11497182.

[65] NHTSA ID: 11495632.



BLOOD HURST & O' REARDON, LLP

00226660

> because there was no indication of anything wrong -- no sounds or dashboard lights or limp mode. Drove to dealership where a scan indicated engine misfire DTC: P0304 was stored in the system. Dealership cleared the system and could not recreate the incident after swapping spark plugs and coils and driving 163 miles over 3 days. Took car home on 11/15/22. Six days later, on 11/21/22, the same thing happened on the highway: as driver accelerated, the engine light came on and flashed and stayed flashing, the engine made vibrating noise, and lost acceleration (limp mode) down to 6 mph on the busy highway. Going 6 mph with flashers on, he was able to reach the ramp for the next exit and pull over on the shoulder. On the shoulder, driver made a video of the engine making clattering sounds and of the engine light flashing on the dashboard. He turned the car off, waited a few minutes, then turned the car back on. Everything seemed fine. Driver exited the highway and drove to the dealership which has had car since 11/21/22. Having no ability to accelerate, and having the vehicle go into limp mode -- having no control -- on a busy highway is extremely dangerous and frightening.

230. On April 26, 2022, the owner of a 2018 Honda CR-V submitted the following complaint to NHTSA:[66]

> As I was driving home from work, I tried to accelerate to merge onto the highway and my car would not go over 30-40 mph. It felt like it was going to stall. This could have caused a major accident. I was able to make it home. I took the 2018 honda crv to the dealer that night and was told that Turbocharger was broke. During this whole ordeal, the engine light did not come on once, nor leading up to this event. The dealer ran computer diagnostics and nothing came up. They had to take the car apart to find out what was wrong. Because the turbocharger had been broken, this also caused damage to the fuel injectors and they needed replaced. 25 days later, again on my way home from work, every single light and warning message is flashing on my dash, as if there is a battery problem. THERE WAS NO WARNING APPEAR PRIOR TO THIS EVENT. Took it back to the dealer and was told that there is blown head gasket, coolant leaking into the cylinder, no compression in cylinder. Luckily, nothing happened while I was driving. THIS NOW REQUIRES MY WHOLE ENGINE TO BE REPLACED. Seems due to driving with the malfunctioning Turbo, the original problem, WHICH I HAD NO IDEA

66 NHTSA ID: 11462330.


BLOOD HURST & O' REARDON, LLP
00226660

> OR WARNING LIGHT, damaged my car further. VERY DISAPPOINTED WITH THE HONDA CRV 2018 SAFETY ONBOARD DIAGNOSTICS AND IN MY OPINION MALFUNCTIONED.

231. On April 5, 2022, the owner of a 2018 CR-V submitted the following complaint to NHTSA:[67]

> The contact owns a 2018 Honda CR-V. The contact stated while driving 65 MPH, the vehicle lost motive power and stalled with several unknown warning lights illuminated. The contact used excessive force to steer the vehicle off the highway and immediately called for roadside assistance. The contact had the vehicle initially towed to her home where her son inspected the vehicle. The contact's son informed her that there was an issue with the engine and the vehicle needed to be towed to the dealer. The vehicle was towed to the dealer and was diagnosed with a defective cylinder head. The manufacturer had yet to be notified of the failure. The vehicle had yet to be repaired and remained in the possession of the dealer. The failure mileage was approximately 72,000.

232. On March 28, 2022, the owner of a 2018 Honda Civic submitted the following complaint to NHTSA:[68]

> The contact owns a 2018 Honda Civic. The contact stated while driving approximately 20 MPH, several unknown warning lights illuminated and the vehicle started to idle very rough. The contact had taken the vehicle to a local dealer however, the vehicle was not diagnosed. The contact drove the vehicle to an independent mechanic who diagnosed that there was an engine cylinder misfire failure with DTC codes: P0302 and P0303. Additionally, the contact stated that there was a strong smell of gasoline in the cabin of the vehicle. The vehicle was not repaired. The manufacturer had been informed of the failure. The failure mileage was approximately 80,000. Fuel injectors were replaced by owner April 10, 2022. Upon oil change the same day, oil was very dark, despite only having 600 miles use since last changed and there was fuel noted in oil. Pictures were sent to NHTSA. Since changing injectors fuel mileage has improved greatly. The car has gone from averaging 37MPG to around 41MPG. Oil changed on 6/27/22, coloration was normal for routing change and did not note fuel in oil. No warning lights or issues with

---

[67] NHTSA ID: 11459671.

[68] NHTSA ID: 11458677.

> operation since injectors changed. The P0302 & P0303 codes were to be covered as part of a service bulletin relating to oil dilution but both Honda corp & dealership stated that injectors were not covered as part of the service bulletin. Even though the injectors could be directly responsible for the oil dilution issue if not properly functioning and throwing codes associated with the bulletin. Owner incurred the expense of rental car for a week, two lost days of onsite work with employer, and cost to purchase injectors. Will provide receipts.

233. On February 17, 2022, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[69]

> My son was driving and car stalled and wouldn't accelerate . Engine light came on. He shut the car off and restarted. Thank god it happened in a rural road. No issues after restarting. Two days later engine light came on along with a Christmas tree of everything else. Took it to a friend who put it on his snap-on code reader. He said take it too dealership. Find out it's a fault head gasket. They want 3700 to fix. The car has 87000 miles on it. I have never seen a head gasket go bad on normal everyday cars. I thought Honda was reliable. I thought wrong.

234. On November 20, 2021, the owner of a 2019 Honda Accord submitted the following complaint to NHTSA:[70]

> Vehicle repeatedly experiences a "cylinder misfire error" when driving above 45 mph. The check engine light will flash and the car surges like it is stalling. Loss of the ability to accelerate when it occurs. Also, the car shakes violently when the vehicle comes to a stop before turning off the engine. Many times, after restarting problem temporarily stops. I have taken it to the dealership multiple times, but problem is unsolved. Happens at least once a week. Started at 58,000 miles. More recently, the vehicle experiences a safety system failure when driving above 45 mph. 10 system warning lights were activated and will continually appear on instrument panel. Warning lights activated: 1. Hill Start Assist Problem 2. Adaptive Cruise Control System Problem 3. Collision Mitigation Braking System Problem 4. Road Departure Mitigation System Problem 5. Emission System Problem 6. Tire Pressure Monitor System Problem 7.Brake System Problem 8. Electric Power Steering

---

[69] NHTSA ID: 11452424.

[70] NHTSA ID: 11441116.



BLOOD HURST & O' REARDON, LLP
00226660

> System Problem 9.Vehicle Stability Assist System Problem 10. Brake Hold System Problem.

235. On October 18, 2021, the owner of a 2018 Honda CR-V submitted the following complaint to NHTSA:[71]

> The contact owns a 2018 Honda CR-V. The contact stated while starting the vehicle, multiple unknown warning lights were illuminated. The contact stated an independent mechanic came to her residence and informed her that the engine needed to be repaired. The vehicle was not repaired. The contact stated that on 10/17/2021, while driving 45 MPH, the engine experienced a misfire and the vehicle started to decelerate. The contact stated that multiple warning lights were illuminated. The contact was able to park on the side of the road. The contact stated she was able to drive back to her residence. The vehicle was not diagnosed or repaired. A dealer was not contacted. The manufacturer had been informed of the failure. The failure mileage was approximately 27,000.

236. On June 23, 2021, the owner of a 2020 Honda Accord submitted the following complaint to NHTSA:[72]

> The contact owns a 2020 Honda Accord. The contact stated while driving 70 mph while attempting to pass another vehicle, the check engine warning light was illuminated and the vehicle went into limp mode. The contact was able to exit the highway and park safely. The vehicle was not drivable. The contact towed the vehicle to the local dealer where it was diagnosed with a misfire on cylinders 1 and 4. The local dealer reset the code. The vehicle was repaired. The manufacturer had been informed of the failure. The failure mileage was approximately 13,762.

237. On January 22, 2021, the owner of a 2018 Honda CR-V submitted the following complaint to NHTSA:[73]

> I WAS ON HIGHWAY I35 HEADING TO DALLAS DRIVING 70MPH. SUDDENLY MY CHECK ENGINE LIGHT STARTED BLINKING AND MY CAR COMPLETELY SHUT DOWN AUTOMATICALLY WHEN I WAS IN THE MIDDLE OF 18

---

[71] NHTSA ID: 11437121.

[72] NHTSA ID: 11422013.

[73] NHTSA ID: 11389341.



BLOOD HURST & O' REARDON, LLP

WHEELERS AND OTHER TRAFFIC ZOOMING BY ME HONKING DUE TO MY SPEED DRASTICALLY DROPPING. I HAD TO COAST ACROSS 3 LANES OF HEAVY TRAFFIC TO GET OVER TO THE SHOULDER. I WAS TERRIFIED I WAS GOING TO GET SLAM INTO BY ONE OF THE MANY SEMI-TRUCKS. IT WAS TERRIFYING. CALLED AND HAD MY CAR TOWED. CLEO BAY HONDA (KILEEN, TX) SAID IT WAS A MISFIRE OF ONE OF THE FUEL INJECTORS. WHEN I PICKED IT UP THE FOLLOWING WEEK, I GOT BACK ON THE FREEWAY TO HEAD BACK TO GEORGETOWN AND THE SAMETHING HAPPENED AGAIN. I AGAIN WAS FORCED TO CROSS 2-3 LANES BY COASTING TO GET OVER TO THE SHOULDER. THEY NOW ARE GOING TO REPLACE ALL 4 FUEL INJECTORS, BUT I HAVE LOST ALL CONFIDENCE IN THIS CAR'S SAFETY. I DO NOT WANT TO TAKE IT ON THE FREEWAY AGAIN, FEARING THE 3RD TIME I WILL BE KILLED. I DODGED TWO BULLETS WITH THIS CAR, WHY SHOULD I BE FORCED TO DODGE ANYMORE? VERY SCARY! THIS CAR WAS PROGRAMED TO SHUT DOWN WHEN A MISFIRE OCCURS BUT THEY FAIL TO CONSIDER WHERE THE DRIVER MIGHT BE WHEN IT HAPPENS. TWICE IT HAPPENED WHEN I WAS ON A BUSY FREEWAY AND I LOST ALL SPEED WITH CARS/SEMI-TRUCKS GOING 70-75MPH PAST ME AND I AM FORCED TO CROSS 3 LANES OF TRAFFIC TO GET TO A SAFE LOCATION. THE FEAR THAT HAPPENED THE FIRST TIME WAS STILL FRIGHTENING AND TO HAVE IT HAPPEN A SECOND TIME WAS TERRIFYING AND I DON'T FEEL SAFE ANYMORE DRIVING IT. IF NOT ME SOMEONE WILL BE KILLED OR SERIOUSLY INJURED DUE TO THIS DEFECT!

238. On November 20, 2020, the owner of a 2018 Honda Accord submitted the following complaint to NHTSA:[74]

DRIVING DOWN THE HIGHWAY GOING 70MPH AND CHECK ENGINE LIGHT STARTS FLASHING. CAR STOPS ACCELERATING I LIMP OVER TO THE MEDIAN. I TURN THE VEHICLE OFF AND TURN IT BACK ON. THE CAR HAS A SOLID CHECK ENGINE ON ALONG WITH ALL THE ASSISTING LIGHTS ON. THE CAR ACCELERATES LIKE NORMAL AND WHEN I GET HOME I DISCONNECT THE BATTERY AND EVERYTHING

[74] NHTSA ID: 11366497.

> CLEARS ONCE I RECONNECT. IN ANOTHER INSTANCE I GO TO TURN MY CAR ON THE CHECK ENGINE LIGHT STAYS ON BUT THE VEHICLE WON'T GO PAST 1500 RPMS AND IT'S BASICALLY IN LIMP MODE WITH THE CHECK ENGINE LIGHT ON AGAIN TO GO ALONG WITH ROAD DEPARTURE SYSTEM, VEHICLE STABILITY SYSTEM, TIRE PRESSURE MONITORING, BRAKE SYSTEM, ELECTRIC POWER STEERING, HILL START ASSIST, ADAPTIVE CRUISE CONTROL , COLLISION MITIGATION AND EMISSION SYSTEM WARNINGS ALL LIGHT UP. I DID THE SAME THING DISCONNECT THE BATTERY AND AGAIN THEY ALL GO AWAY. THIS HAS BEEN GOING ON FOR A MONTH. AT LEAST 9 TIMES WHERE ALL THE WARNING LIGHTS COME ON ALONG WITH THE CHECK ENGINE LIGHT. ONCE WHEN I'M TRAVELING AS EXPLAINED AND 2 TIMES WHERE IT GOES INTO LIMP MODE FROM THE START. TOOK VEHICLE TO A FRIEND AND GOT A P0303 CYLINDER 3 MISFIRE. HAVING DONE RESEARCH OF THE CODE NOTICED THAT 2012-2018 HONDA'S HAVE HAD SIMILAR ISSUES ADDRESSED BY A BULLETIN AND EXTENDED THE WARRANTY FOR THOSE VEHICLES. MY CAR HAS 70K AND IT'S CURRENTLY OUT OF THE WARRANTY PERIOD. THANK YOU.

239. On November 3, 2019, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[75]

> 2017 HONDA CRV WITH 1.5 L TURBO 4 CYLINDER ENGINE. HEALTH HAZARD: NOTED GASOLINE FUMES IN CABIN AFTER STARTING THE CAR. THE FUMES ARE COMING IN THROUGH THE VENTILATION SYSTEM. HAPPENING IN BOTH COLD AND HOT WEATHER. CAR HAS 30K MILES ON IT. FUMES NOTICED WHEN CAR IS STATIONARY AFTER STARTING IT. ALSO FOUND TO HAVE GAS ENTERING OIL PAN, DILUTING THE OIL, AND CAUSING HIGH OIL LEVELS. SIMILAR REPORTS FROM MANY OTHER OWNERS OF THIS VEHICLE WITH THIS ENGINE AND APPARENTLY A MAJOR RECALL IN CHINA FOR THE PROBLEM. AM CONCERNED ABOUT HYDROCARBON LEVELS IN THE PASSENGER CABIN WHICH CAN BE A MAJOR HEALTH HAZARD. JUST BECAUSE THE FUMES DISSIPATE

[75] NHTSA ID: 11145159.

> AFTER A MINUTE OR SO DOES NOT NECESSARILY MEAN THAT THE HYDROCARBON LEVELS IN THE CABIN ARE NORMAL FOR THE REST OF THE RIDE. OTHER MAJOR CONCERN IS PREMATURE WEAR ON THE ENGINE DUE TO GAS MIXING WITH OIL. ANOTHER CONCERN IS REPORTS OF CRVS WITH THIS PROBLEM STALLING AT HIGH SPEEDS AND FAILING TO ACCELERATE PROPERLY. HONDA USA HAS NOT ADDRESSED THE PROBLEM AS OF THIS DATE NOR HAVE THEY OFFERED ANY SOLUTIONS. I FEEL LIKE I WASTED OVER $30K ON A VEHICLE THAT IS NOW UNSAFE AND DESTINED TO PREMATURE ENGINE FAILURE. I THINK THERE NEEDS TO BE A RECALL TO FIX THIS PROBLEM.

240. On December 27, 2018, the owner of a 2018 Honda CR-V submitted the following complaint to NHTSA:[76]

> ABNORMAL OIL DILUTION CAUSING EXCESSIVE WEAR AND TEAR ON THE ENGINE. CAR TALKING LONG TIME TO WARM UP. NOT RUNNING SMOOTHLY. FOUL SMELL OF GAS IN THE CABIN.

241. On November 27, 2018, the owner of a 2016 Honda Civic submitted the following complaint to NHTSA:[77]

> ENGINE STALLED MULTIPLE TIMES IN LAST ONE YEAR WHEN ACCELERATING FROM YELD/STOP. IT HAPPED TWICE WHILE YIELDING AND MERGING ONTO HIGHWAYS; WE WERE LUCKY THERE WERE NO VEHICLES ON HIGHWAY DURING MERGING, OTHERWISE SITUATION WOULD HAVE THE WORST . ALSO ALL WARNING LIGHTS ON THE DASH BOARD FLASHES WITH FAILURE WARNINGS. AT THAT POINT ENGINE ALMOST STALLED RUNNING ONLY AT SPEED OF 10 M/H ATLEAST WHICH HELPED ME TO PULL OFF THE HIGHWAY. I SWITCHED OFF AND ON, ENGINE CAME LIVE, BUT ALL THE WARNING LIGHTS WERE STILL THERE. WARNINGS ON THE DASHBOARD WERE CLEARED ONLY NEXT DAY AFTER WHOLE NIGHT IDLE. I TOOK THE VEHICLE TO HONDA DEALER, EXPLAINED THE PROBLEM AND ALSO PROVIDED THEM THE VIDEO THAT MY FRIEND SITTING IN

---

[76] NHTSA ID: 11163629.

[77] NHTSA ID: 11154143.

> THE PASSENGER SEAT RECORDED WHILE INCIDENT HAPPENED. DEALERSHIP TRIED TO PULL THE ERROR CODE, BUT NONE WERE FOUND. DEALER ASKED ME TO KEEP THE VEHICLE WITH DEALERSHIP AS THEY NEED TO REPRODUCE THE ISSUE. FORTUNATELY THEY REPRODUCED THE EXACT SAME ISSUE, AND FOUND THE ENGINE CYLINDER MISFIRES IN 1 AND 4. THEY INTIMATED HONDA ENGINEERING FOR ASSISTANCE, AND HONDA ASSISTED THEM TO RECALIBRATE THE SYSTEM WITHOUT FINDING THE ROOT CAUSE. DEALERSHIP RECALIBRATED AND DIRECTED BY HONDA AND TOLD ME THAT IF THE ISSUE HAPPENS AGAIN THAT WILL BE FIXED UNDER WARRANTY. ALL THESE TRANSCRIPTS WERE RECORDED IN SERVICE HISTORY OF MY VEHICLE. THE SAME ISSUE APPEARED YESTERDAY AGAIN. WHEN I RESEARCHED ABOUT THE ISSUE ON INTERNET, MOST OF THEM COMPLAINED ABOUT THE ENGINLE OIL AND GAS MIXUP. I CHECKED MY OIL LEVEL WITH OIL CHECK STICK PROVIDED BY HONDA, AND OIL LEVELS ARE WAY ABOVE THAN MAX MARK AND OIL SMELLS LIKE GASOLINE; AND MORE OVER THE OIL LOOK VERY THIN ALMOST LIKE WATER THICKNESS.

242. On November 26, 2018, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[78]

> MY 2017 HONDA CRV EX 1.5 LTR TURBO ENGINE HAS AN OIL DELUTION ISSUE FUEL IS GETTING INTO THE CRANKCASE DELUTING THE OIL TOOK IT TO THE DEALER ALL THEY DID WAS CHANGE THE OIL I CONTACTED HONDA GOT A CASE NUMBER#09145359 THEY SAID SOMEONE WOULD CALL ME ABOUT THE ISSUE. NO ONE HAS CALLED AT THIS TIME NOV 26TH 2018.

243. On November 25, 2018, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[79]

> MY 1.5L TURBO CHARGED ENGINE HAS A STRONG GASOLINE ODOR IN THE ENGINE OIL. SO GASOLINE IS MIXING WITH MY ENGINE OIL AND MAY CAUSE EARLY ENGINE FAILURE OR A

---

78 NHTSA ID: 11154124.

79 NHTSA ID: 11153597.



BLOOD HURST & O' REARDON, LLP

00226660

> SAFETY ISSUE. I NOTICED THE GASOLINE SMELL WHEN CHANGING MY ENGINE OIL AND THE CAR IS PARKED.

244. On November 20, 2018, the owner of a 2017 Honda CR-V submitted the following complaint to NHTSA:[80]

> FUEL IS GETTING IN ENGINE OIL AND DELUTING IT. 1.5 TURBO ENGINE. CALL HONDA OF AMERICA THEY SAID TO TAKE TO DEALER FOR INSPECTION. HONDA GAVE ME A CASE NUMBER. DEALER CHANGE OIL TOLD TO KEEP A WATCH ON IT. CALLED HONDA BACK WITH CASE NUMBER THEY SAID HONDA HAS NO FIX AT THIS TIME. I WAS TOLD JUST TO WATCH FOR SOMETHING ON THE INTERNET TO SEE IF THERE WAS GOING TO BE A FIX. MEANWHILE MY ENGINE IN BEING DAMAGED BY NOT HAVING PROPER OIL LUBERCATION FROM FUEL BEING IN OIL.

245. On November 15, 2018, the owner of a 2016 Honda Civic submitted the following complaint to NHTSA:[81]

> ISSUE WITH THE 1.5 TURBO CALLED OIL DILUTION. CHINA HAD A RECALL ON THE TURBO DUE TO THE FUEL DILUTION PROBLEM (FUEL GETTING INTO OIL). BACK IN SEPTEMBER ON THE WAY TO OHIO FROM INDIANA CIVIC BROKE DOWN AND STALLED WHILE DRIVING DOWN INTERSTATE 70, DURING A RAIN STORM. NOT A SAFE SITUATION AT ALL. CIVIC WAS TOWED TO A HONDA DEALER IN DAYTON. WAS TOLD OIL WAS OVERFULL AND THEIR SOLUTION WAS TO DRAIN AND FILL WITH PROPER AMOUNT. WAS TOLD BY THE DEALER THEY HAD SEEN THAT BEFORE. IT IS COMING TOGETHER FOR ME NOW WHEN I SAW A CONSUMER REPORT YOUTUBE DISCUSSING THIS ENGINE ISSUE AND THIS YOUTUBE: HTTPS://WWW.YOUTUBE.COM/WATCH?V=J80BFJS-16U. 1.5 TURBO IS BUILDING UP FLUID IN THE CRANKCASE LIKE ON THE 1.5 TURBOS IN THE CIVIC. HAD THE OIL CHANGED AGAIN RIGHT AT TWO MONTHS LATER, HERE IN INDIANA, WITH LIKELY LESS THAN 2000 MORE MILES AND THERE IS AGAIN BUILDUP OF FLUID IN THE CRANKCASE. THE OIL WAS

[80] NHTSA ID: 11152828.

[81] NHTSA ID: 11151864



BLOOD HURST & O' REARDON, LLP
00226660

> OVERFULL AS CONFIRMED BY THE TECHS AT THE LOCAL INDIANA HONDA DEALER. THIS IS A SAFETY ISSUE.

246. On July 1, 2016, the owner of a 2016 Honda Civic submitted the following complaint to NHTSA:[82]

> I HAVE A BRAND NEW 2016 CIVIC 1.5T EX-L WITH 1,000 MILES AND A CRACKED ENGINE BLOCK. WE NOTICED THE ENGINE OIL ALL OVER OUR GARAGE. IT'S BEEN LEAKING FOR A WHILE, PROBABLY SINCE WE GOT IT, BUT WE DIDN'T REALIZE UNTIL TODAY THAT THE OIL WAS COMING FROM OUR BRAND NEW CAR. AFTER OUR OWN INVESTIGATION, WE RULED OUT ALL OF OUR OTHER CARS AND TOOK IT INTO DEALERSHIP TODAY.

247. The above complaints are just a small sample of the thousands of complaints submitted to NHTSA and Honda and posted online related to the Engine Defect.

248. As demonstrated above, Class Vehicles suffer from a uniform defect in the Engines and/or related components that causes the vehicles to leak coolant through the cylinder head surface into the adjacent combustion chambers, leading to overheating and blown head gaskets, among other component failures, as well catastrophic Engine failure.

249. Honda also monitors social media platforms and online forums, including Honda-specific forums, which, upon information and belief, Honda monitors to track product performance and customer satisfaction. Accordingly, Honda is and was aware of the numerous, widespread complaints about the Engines in the Class Vehicles.

250. Owners and lessees of the Class Vehicles have also reported the Engine Defect on social media platforms and online forums, including Honda-specific forums

[82] NHTSA ID: 10882160.

such as “accordxclub.com”[83] and “Driveaccord.net.”[84]

251. Below are samples of complaints posted to those forums:

> **2018 Honda Accord 1.5T engine failure**
>
> → Jump to Latest
>
> 47K views 30 replies 14 participants last post by ikeepitcarbed Jan 22, 2022
>
> J
>
> Jeff Penney Discussion starter
>
> 4 posts · Joined 2019
>
> #1 · May 28, 2019 (Edited by Moderator)
>
> Hello everyone first post here although I've been reading the forum a while. Like the title says on April 24th my wife went to start the accord to drive home from work and it would not start. Got the vehicle towed to the dealer and it turned out to be a bent piston rod. Been driving a rental covered by warranty since. They claim that they are waiting for a head gasket and it is on backorder. Very frustrating it's been at the shop for 5 weeks now. The car was 8 months old with only 12000km all required maintenance was done by the dealer. Does anybody else have similar issues?
>
> Reply Like Save Share

///

///

///

---

83 https://www.accordxclub.com/threads/2018-honda-accord-1-5t-engine-failure.6664/?post_id=24588&nested_view=1&sortby=oldest#post-24588

84 https://www.driveaccord.net/threads/blown-head-gasket-any-recall.559243/; https://www.driveaccord.net/threads/2018-accord-exl-2-0-with-blown-head-gasket-at-95k-miles.566587/;https://www.driveaccord.net/threads/blown-head-gasket-any-recall.559243/

BLOOD HURST & O' REARDON, LLP

## Blown Head Gasket. Any Recall?

#2019 #headgasket

→ Jump to Latest

101K views 287 replies 120 participants last post by alfonsoochoa901 6d ago

JLeigh Discussion starter
2 posts · Joined 2021

#1 · Aug 3, 2021

Has anyone had blow head gasket issues with their 2018 Honda Accord? We have our car at the dealership now and they are saying we have a blown head gasket (possibly) and once we give them to ok to fix they will pull it apart to see if it also has a cracked engine.

I have been looking through sites and found that several other people are having the same issue with the 2018 (mostly turbo) Honda accord but Honda will not do anything/issue a recall until enough people complain.

So is anyone else having the same issue? Have you documented it with Honda? What is the best way to document with them in hopes that there is a recall if this is a common issue that is happening?

Jana and Rachelle

Reply Like Save Share

## 2018 Accord EXL 2.0 with blown head gasket at 95k miles

→ Jump to Latest

19K views 31 replies 18 participants last post by cryptolime Dec 3, 2023

Slickrick95 Discussion starter
9 posts · Joined 2018

#1 · Dec 12, 2022

Well...I just came back from the dealer with a diagnosis of a blown head gasket and coolant leaking into cylinder 2 & 3 on my 2018 accord 2.0 with 95,000 miles. I received a back pocket estimate of $5k to repair and I am absolutely shocked at not only the cost to repair but the fact that I am having to deal with this on a religiously maintained, supposedly reliable vehicle. The service manager has agreed to reach out to Honda corporate and request a goodwill repair and I hope they will be successful because this feels like a punch in belly.

Some quick history:
I noticed coolant loss about 5 mos ago in the reservoir and radiator but did not see any leaks, white foam under the oil fill cap, smoke out of the exhaust, visually contaminated oil, coolant smell from the vents, wet floor boards or overheating. Pretty confident it was simply a pinhole in the radiator somewhere I decided to refill and observe for any further loss since the vehicle ran fine otherwise. In total I added 2/3 of a gallon. About a month ago, the check engine came on with cylinder 2 misfire. I replaced all the spark plugs since i was so close to 100k and also changed out coil pack on spark plug 2 myself with honda OEM parts. I had suspicions of what was going on but was hopeful for the best outcome. Vehicle ran fine for ~750 miles and then the misfire came back. I brought the vehicle in for diagnosis and my fears were confirmed...a blown head gasket and a $5k bill.

Wondering what everyone's thoughts are on:

See more

BLOOD HURST & O' REARDON, LLP



Blown Head Gasket. Any Recall?

#2019 #headgasket

→ Jump to Latest

112K views 296 replies 127 participants last post by amazon6freekodi2017 24h ago

JLeigh Discussion starter

2 posts · Joined 2021

#1 · Aug 3, 2021

Has anyone had blow head gasket issues with their 2018 Honda Accord? We have our car at the dealership now and they are saying we have a blown head gasket (possibly) and once we give them to ok to fix they will pull it apart to see if it also has a cracked engine.

I have been looking through sites and found that several other people are having the same issue with the 2018 (mostly turbo) Honda accord but Honda will not do anything/issue a recall until enough people complain.

So is anyone else having the same issue? Have you documented it with Honda? What is the best way to document with them in hopes that there is a recall if this is a common issue that is happening?

Jana and Rachelle

Reply Like Save Share

252. Honda knew that the Engine Defect was present in all Class Vehicles but has failed to recall them and provide an adequate remedy. Honda's unconscionable acts deprive Class Members of an adequate remedy, if one is devised and implemented.

253. The Engine Defect renders the Class Vehicles inoperable and creates an unreasonable risk of injury or death to Plaintiffs, Class Members, and others, and, thus, the Class Vehicles are not fit for their ordinary purpose.

**3. Warranty Data**

254. Honda also knew about the Engine Defect from its warranty data. Per the TREAD Act, Honda tracks customer complaints, vehicle diagnoses, and repairs from dealership technicians in a single, aggregated database.[85] Honda employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings.[86] For every one complaint filed with NHTSA, Honda

85 https://one.nhtsa.gov/nhtsa/announce/testimony/tread.html

86 https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V439-2939.PDF



BLOOD HURST & O' REARDON, LLP

likely receives hundreds or thousands of related warranty claims.[87] Accordingly, Honda has likely received thousands of Engine Defect warranty claims from the start of production.

255. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analyses, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to NHTSA, public consumer complaints made online, and the testing performed in response to the consumer complaints, Honda knew the Engine Defect was present in all Class Vehicles, but it has not disclosed the Engine Defect or provided an adequate repair to all Class Vehicles. Honda's halfhearted and unconscionable acts deprived and continues to deprive Plaintiffs and Class Members of the benefit of their bargain. Had Plaintiffs and Class Members known what Honda knew about the Engine Defect, they would not have purchased their Class Vehicles or certainly would have paid less to do so.

### 4. Honda's Manufacturer Communications Related to the Engine Defect

256. On October 4, 2017, Honda issued an inspection request to Authorized Honda Dealerships requesting to inspect certain 2016-2018 Civics and 2017-2018 CR-Vs for complaints of oil leaks from the head cover gasket.[88] No root cause was identified, and no repair was offered for customers suffering from the Engine Defect.[89]

257. On December 13, 2022, Honda issued an inspection request to Authorized Honda Dealerships requesting certain 2020-2021 Accord 2.0Ls and Civic

---

87 https://static.nhtsa.gov/odi/rcl/2017/RMISC-17V418-5009.pdf (zero field reports, 3,826 warranty claims).

88 Exhibit D.

89 *Id.*

2.0Ls with customer complaints of an oil leak from the head cover gasket.[90] No root cause was identified, and no repair was offered for customers suffering from the Engine Defect.[91]

258. On March 14, 2023, Honda issued a TSB for all 2018-2022 Accord 2.0Ls with consumer complaints of cylinder misfire.[92] Per the TSB, Honda Authorized Dealerships were to only reset the maintenance minder light, replace the oil, clear any DTCs, and update the PGM-FI software with the latest version. [93] No root cause was identified, and no repair was offered for customers suffering from the Engine Defect beyond the general maintenance steps listed above.

259. On May 2, 2024, Honda issued a second TSB for all 2018-2022 Accord 2.0Ls with consumer complaints of cylinder misfire.[94] Per the TSB, Honda Authorized Dealerships were to only reset the maintenance minder light, replace the oil, clear any DTCs, and update the PGM-FI software with the latest version.[95] No root cause was identified, and no repair was offered for customers suffering from the Engine Defect beyond the general maintenance steps listed above.

260. On July 26, 2024, Honda issued a parts request[96] to Honda Authorized Dealerships for certain 2018-2022 1.5L's Accords, as well as 2017-2022 1.5Ls CR-V, and 2020-2020 CR-V FHEVs with customer complaints of the Malfunction Indicator Light (MIL) on with the DTC P030X (Cylinder Misfire Detected) stored. Honda also stated that customers may experience rough running of the engine.

---

90 Exhibit E.
91 *Id.*
92 Exhibit F.
93 *Id.*
94 Exhibit G.
95 *Id.*
96 Exhibit H.



BLOOD HURST & O'REARDON, LLP
00226660

261. A qualifier for the parts request was that "Head Gasket coolant leak to cylinder has been confirmed."[97] Honda offered technicians VISA gift cards for reporting the qualifying failures, but no repair was offered to customers suffering from the Engine Defect.

262. On August 15, 2024, Honda issues a second parts request[98] to Honda Authorized Dealerships for certain 2018-2022 1.5's Accords, as well as 2017-2022 CR-V 1.5Ls, and 2020-2020 CR-V FHEVs with customer complaints of the Malfunction Indicator Light (MIL) on with the DTC P030X (Cylinder Misfire Detected) stored.

263. Again, a qualifier for the parts requests was that "Head Gasket coolant leak to cylinder has been confirmed."[99] No repair was offered for the customers suffering from the Engine Defect, but Honda again offered technicians VISA gift cards for reporting the qualifying failures.[100]

264. Despite knowledge of the Engine Defect, Honda did not offer repairs for customers suffering from the Defect, nor did Honda cover any attempted repairs under warranty.

**5. Honda's Design Changes**

265. Internally, Honda has worked to try to find a solution for the Engine Defect without informing consumers. For the 1.5-liter engine, Honda modified the short block design of the Class Vehicles starting for the 2019 Model Year (Part No. 10002-6A0-A01).[101]

---

97 *Id.*

98 Exhibit I.

99 *Id.*

100 *Id.*

101 https://www.hondapartsnow.com/genuine/honda~general~assy~cylinder~block~10002-6a0-a01.html

266. However, this design change did not eliminate the root cause of the Engine Defect because the design continued to include an external coolant passageway at the point where the engine's cylinder head attaches to the engine block.

267. Starting for the 2020 model year Accord, Honda introduced a modified head gasket design for the 1.5-liter engine in an attempt to eliminate the Engine Defect. This design change was later implemented in the Civic and CR-V starting in model year 2021. However, the Engine Defect persisted.

268. For illustrative purposes, the below image contains the newly designed head gasket (left) and the previous head gasket design (right) for the 1.5-liter engines:




269. As highlighted above, the 2020 design change only modified the size and location of certain oil and coolant passages in an attempt to better manipulate oil and coolant flow.

270. However, through Plaintiffs' independent automotive consultant's testing, this design change proved to be ineffective, and the Class Vehicles' engines continue to suffer from the Engine Defect.

271. Specifically, because the external passageway remains, the head gasket continues to lack the sealing surface necessary to contain the high-pressure gases generated during combustion from escaping. As a result, the engine experiences a loss of compression, resulting in reduced engine power, poor fuel economy, and rough running.

272. Moreover, with inadequate sealing, engine coolant continues to leak through the gasket, causing coolant to mix with engine oil, resulting in the engine overheating due to pressure build-up in the cooling system, potentially leading to significant engine damage.

273. The below image of a 2018 Honda Accord equipped with the 2020 head gasket design demonstrates the Engine Defect eroding the head gasket between the cylinder and combustion chambers leading to head gasket failure, among other things:



274. Finally, starting in the 2023 model year for the Class Vehicles, Honda introduced its second short engine block design change.[102]

275. Since the specifics of the 2023 design change are currently in the exclusive and superior possession of Honda, Plaintiffs can only confirm if the 2023 model years and onward are free of the Engine Defect through discovery.

276. Because the Engine Defect is a latent defect, few failures for the Engine Defect for the 2023 to present Honda Accord, Civic, CR-V, TLX, and RDX model years have been reported. For this reason, those vehicles are not currently covered under the Class Vehicle definition.

277. The full scope of the Class Vehicles can only be properly determined through discovery.

**6. History Of External Coolant Passageways Related Failures**

278. Other manufacturers in the automotive industry have acknowledged block designs like the one utilized by Honda in the Class Vehicles are inadequate.

279. Specifically, Ford Motor Company ("Ford") issued recalls in 2012 (NHTSA Recall No. 12V-551), 2013 (NHTSA Recall No. 13V-583), and 2017 (NHTSA Recall No. 17V-209) for their EcoBoost engines suffering from coolant leaks, cylinder misfires, and failed head gaskets, among other things.

280. Ford also issued a Customer Service Program in December 2019, allowing customers to receive a free engine block replacement if the vehicle was damaged due to the defective block designed with an external passageway.

281. Additionally, in September 2020, a class action lawsuit was filed against Ford in the Eastern District of California.[103] The plaintiffs in that case alleged the existence of an engine defect in Ford's 1.5L, 1.6L, and 2.0L EcoBoost engines, which caused engine coolant to leak into the engine's cylinders.

---

[102] https://www.hondapartsnow.com/genuine/honda~general~assy~10002-6a0-a02.html

[103] *Miller, et al. v. Ford Motor Co.*, 2:20CV01796.

282. The plaintiffs in the case alleged the root cause of the defect to be the placement of an external coolant passageway at the point where the engine's cylinder head attaches the engine block, as seen here:



283. Starting in the 2021 model year, Ford eliminated the external passageway from the engine block and instead utilized a drilled, internal passageway running within the engine block. This design change was done to eliminate the defect plaguing Ford's EcoBoost engines.

284. Specifically, upon information and belief, the internal passageway within the engine block allowed for more direct and efficient heat removal from critical engine components, including around the cylinders where combustion occurs. This optimized heat transfer and helped to maintain a more consistent engine temperature, reducing the risk of hot spots, corrosion, and potential engine damage.

285. As an automotive manufacturer, Honda monitors its competitors to gain early insight into potential issues that may affect Honda's own vehicles.

286. Given that the alleged root cause of the defect in Ford's EcoBoost engines is substantially similar to the one alleged here, Honda has been or should have been aware of the defect in its own engine design since at least 2012 when Ford issued its first recall for a substantially similar defect.

**F. Honda Touted the Safety, Quality, and Reliability of the Class Vehicles, Concealing the Engine Defect**

287. Honda has operated in the United States since 1959, manufacturing and selling passenger cars such as the Accord and Civic, and light trucks such as the CR-V, since 1976, 1972, and 1997, respectively.

288. In its tenth generation, the Honda Accord underwent major changes in 2017, and Model Year 2018-2022 Accords now come standard with the 1.5-liter and 2.0-liter Turbocharged engines, depending on trim level.

289. Since 2015, the tenth-generation Civic sedan has been sold by Honda. Model Year 2016-2022 Civics come equipped with the 1.5-liter and 2.0-liter Turbocharged engines, depending on trim level.

290. In 2017, Honda introduced its fifth generation CR-V. Its Model Year 2017-2023 CR-Vs contain the 1.5-liter turbocharged engine, depending on trim level.

291. Since 2020, the second generation TLX has been sold by Acura. Model Year 2020 to present TLXs come equipped with the 2.0-liter Turbocharged engine, depending on trim level.

292. Since 2018, the third generation Acura RDX has been sold by Acura. Model year 2019 to present RDXs come equipped with the 2.0-liter Turbocharge engine.

293. Through its network of over 1,000 dealerships across the United States,[104] Honda has become one of the top automakers in the United States in terms of sales.

294. In 2020 and 2021, Honda sold 1.34 million and 1.46 million vehicles, respectively.[105]

---

104 https://hondanews.com/en-US/pages/honda-in-america

105 https://www.best-selling-cars.com/usa/2021-full-year-usa-honda-and-acura-sales-by-model/#:~:text=Honda%20Brand%20Sales%20in%20the,top%2D selling%20Honda%20car%20 (last visited August 27, 2024)

295. In 2021, 95% of the Honda and Acura automobiles sold in the United States were produced in North America.[106]

296. The Accord has been Honda's third bestselling vehicle, selling over 199,000 vehicles and over 202,000 vehicles in 2020 and 2021, respectively.[107]

297. The Civic sold over 261,000 vehicles and over 263,000 vehicles in 2020 and 2021, respectively.[108]

298. The CR-V has been Honda's best-selling vehicle in the United States, selling over 333,000 vehicles in 2020, and over 361,000 vehicles in 2021.[109]

299. The TLX sold over 21,000 vehicles and 26,000 vehicles in 2020 and 2021 respectively.[110]

300. The RDX sold over 52,000 vehicles and 57,000 vehicles in 2020 and 2021 respectively.[111]

301. Honda is a large player in the United States auto-market based on its assurances to consumers of care, durability, and quality.

302. Consistent with its marketing and public statements, Honda falsely represents its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

303. Honda has branded itself as a reliable vehicle manufacturer. Honda's overarching marketing message for the Class Vehicles was and is that it creates safe, efficient, and dependable vehicles. This marketing message is false, and misleading given the Engine Defect, which can cause the Class Vehicles' Engines to suffer from coolant leakage through the cylinder head surface into the adjacent combustion

---

[106] *Id.*
[107] *Id.*
[108] *Id.*
[109] *Id.*
[110] *Id.*
[111] *Id.*

chambers, leading to overheating and blown head gaskets, among other component failures, as well as catastrophic Engine failure.

304. Honda directly markets, for its benefit, the Class Vehicles to consumers via extensive nationwide multimedia advertising campaigns on television, the internet, billboards, print, mailings, social media, and other mass media, which impart a universal and pervasive marketing message: safe and reliable vehicles.

305. Honda dedicates a page on its website entitled "safety," where Honda represents the safety of its vehicles.[112] Therein, Honda states that it conducts "3D Model Testing," and touts that it has "developed an advanced safety visualization technology to create highly detailed three-dimensional models of a vehicle's crash safety structure."

306. Further, Honda states that "[f]or 50 years, Honda has built some of the most-praised vehicles on the road – and some of the safest," linking to a webpage listing Honda's lineup of awards.[113]

307. Honda further represents that it conducts "Virtual & Real-World Tests[,]" and touts that it has "developed two of the world's most advanced crash-test facilities – including the largest ever built and first to allow multi-directional crashes." Honda states that it also "dreamt bigger to digitally savvy used-car consumers (June 6, 2019), create some of the most advanced virtual crash tests in the world. All this combines to make safer roads for everyone."[114]

308. Notwithstanding the presence of the Engine Defect in millions of Class Vehicles which prevents drivers from safely driving their cars, Honda calls itself "a mobility company–we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[115]

---

112 https://www.honda.com/safety

113 *Id.*

114 *Id.*

115 https://www.honda.com/safety/virtual-and-real-world-tests



00226660

BLOOD HURST & O'REARDON, LLP

309. Honda claims that the safety testing procedures it utilizes "allows [Honda] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."[116]

310. Honda's website has a section devoted to safety, called "Safety For Everyone."[117] Therein, it includes promotional videos touting the pre-sale safety testing it conducts.

311. For example, the webpage includes a video interview with Bryan Hourt, Chief Engineer for North America Safety Strategy and Planning, in which he touts the various pre-sale tests that Honda conducts and its "development of core safety technologies."[118]

312. Honda's YouTube channel similarly displays a commercial titled "Each Honda is engineered with Safety for Everyone in mind," dated January 8, 2021.[119]

313. In the commercial, Honda's Manager/Principal Engineer of Crash Safety touts Honda's "safety for everyone philosophy." The video description reads, "[f]rom our own family members to yours, safety is a top priority when engineering our vehicles. When you or your loved ones get behind the wheel of a Honda, you're driving a vehicle that's been designed with Safety for Everyone in mind." [120]

314. A screenshot of the advertisement is included below.

///

///

116 *Id.*

117 https://hondanews.com/en-US/safety

118 https://hondanews.com/en-US/safety/channels/channel-ca54ead83e3667d0b2045585b001b6d4?sortOrder=PublishedAscending&selectedTabId=channel

119 https://www.youtube.com/watch?v=t5VltkR4J_w

120 *Id.*




315. The uniform marketing message from Honda concerning the reliability of its vehicles is also found in Honda's marketing brochures for the Class Vehicles.

316. Featured prominently in Honda's marketing materials are claims of excellence in quality, design, safety, and reliability.

317. On information and belief, Honda requires its marketing brochures to be provided to prospective customers at its network of dealerships.

318. Advertised by Honda as "comfortable, secure[,]" and "impressive[,]" Honda touts the "1.5-liter, turbocharged and intercooled engine" and the "2.0-liter, turbocharged and intercooled engine" found in 2022 Civic vehicles.[121]

///

///

///

///

///

///

///

///

[121] https://cdn.dealereprocess.org/cdn/brochures/honda/2022-civic.pdf



BLOOD HURST & O' REARDON, LLP

319. An excerpt from the 2022 Honda Civic advertisement follows:




320. Honda further claimed the 2021 Civic has "advanced engineering[,]" and noted the vehicle's "1.5-liter, turbocharged and intercooled engine[.]" An excerpt of the 2021 Honda Civic advertisement follows:






BLOOD HURST & O' REARDON, LLP

00226660

321. Honda makes similar claims throughout its brochures for the 2019 Civic, stating the vehicle is "[p]acked with cutting-edge technology[,]" including the "2.0-liter, turbocharged" engine.[122]

322. In the brochure for Honda's model year 2021 vehicles, Honda states the Accord is "[t]he most impressive Honda ever," with "more advanced features than ever," including "the latest technology."[123]

323. In a 2022 Honda Accord brochure, Honda emphasized its "dedicat[ion] to identifying and implementing advanced designs and features that help enhance the safety of drivers and passengers[.]"[124]

324. Honda's 2018 brochure for the Accord makes similar claims, describing the "1.5-liter . . . turbocharged engine[ ]" as "[f]ast forward thinking," and the vehicle as "[a]t the forefront of safety."[125] The 2018 Accord brochure is copied below:




---

122 https://cdn.dealereprocess.org/cdn/brochures/honda/2019-civic.pdf
123 https://dealerinspire-brochure.s3.amazonaws.com/2021.pdf
124 https://cdn.dealereprocess.org/cdn/brochures/honda/2022-accord.pdf
125 https://cdn.dealereprocess.org/cdn/brochures/honda/2018-accord.pdf

325. In addition, Honda stated that its 2021 Civic is "[a]n extraordinary ride . . . culminating in a driving experience not soon forgotten" because of its "advanced engineering[,]" and "suite of safety and driver-assistive features[.]" In light of all these purported safety features and attention to detail, Honda promises its drivers "[c]onfidence on the road."[126]

326. In its brochure for the 2021 TLX, Honda states that the VTEC turbo, direct-injection engine provides "enhanced performance and acceleration off the line."[127]

327. In its brochure for the 2018 Accord, Honda states that the vehicle is "[t]he most impressive Honda ever."[128]




---

[126] https://cdn.dealereprocess.org/cdn/brochures/honda/2019-civic.pdf
[127] https://autocatalogarchive.com/wp-content/uploads/2020/10/Acura-TLX-2021-USA.pdf
[128] https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf

BLOOD HURST & O' REARDON, LLP

328. Additional representations about reliability-related topics include affirmative promises that the vehicle was "[b]uilt for what-if" and is "[a]t the forefront of safety."[129]

329. Similarly, in a January 2020 tweet, Honda spotlighted the "impressive safety features" of its 2020 Honda Civic.




330. Honda's touting of the safety and reliability of the Class Vehicles while knowing of the Engine Defect and the Engines' gross underperformance is unfair and unconscionable.

331. Honda has marketed its products, including the Class Vehicles, as safe and reliable vehicles for years.

---

129 *Id.*

332. Although Honda markets the Class Vehicles as safe and reliable, in the field, the Class Vehicles fail to meet that promise. Instead, Honda omits the true nature of the Class Vehicles and the fact that the Class Vehicles suffer from the Engine Defect. Honda has never disclosed the Engine Defect to Plaintiffs or the other Class Members.

333. Plaintiffs and the other Class Members were exposed to Honda's pervasive and long-term marketing campaign touting the supposed quality, safety, and reliability of the Class Vehicles.

334. Plaintiffs and the other Class Members, as any reasonable customer would, justifiably made their decisions to purchase or lease their Class Vehicles based, in material part, on Honda's misleading marketing, including affirmations of facts, promises, and representations, which also omitted any disclosure of the Engine Defect.

335. Honda has actively concealed the Engine Defect throughout the Class period despite its pervasive knowledge. Specifically, Honda has:

a. Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Engine Defect;

b. Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles suffered the Engine Defect, were defective, and not fit for their intended purposes;

c. Failed to disclose, and actively concealed, the fact that the Class Vehicles suffered the Engine Defect and were defective, despite that Honda learned of the Engine Defect as early as 2016 or before, and certainly well before Plaintiffs and the other Class Members purchased or leased their Class Vehicles; and

d. Failed to disclose, and actively concealed, the existence and pervasiveness of the Engine Defect even when Class Members directly asked about it during communications with Honda, Honda dealerships, and Honda service centers.

336. Honda also creates or approves much, if not all, of the marketing materials provided by a Honda-authorized dealership to consumers prior to or at the time of purchase. Honda, through its dealers and those marketing materials, could have disclosed the Engine Defect and the true nature of the Class Vehicles, but it failed to do so. As a result of Honda's omissions of material facts at the point of sale, Plaintiffs and Class Members were misled and overpaid for their Class Vehicles.

### G. Honda's Dealers Are Its Agents and Plaintiffs and Class Members Are Third Party Beneficiaries

337. Honda controls its dealerships, and the dealerships act for the benefit of Honda.

338. Namely, Honda controls, among other things, what vehicles the dealerships sell; the number of vehicles supplied to dealerships (based on sales performance); how dealerships market the vehicles; what incentives and rebates a dealership can offer; the layout of dealerships, including logo placements; and how to diagnose and repair issues. Moreover, when dealerships sell the vehicles to consumers, they bind Honda to a contract (e.g., warranties).

339. Honda "sells" the vehicles to dealerships. Plaintiffs and Class Members are third-party beneficiaries of these sales contracts between dealerships and Honda because the terms of the contracts, such as the warranties, are for the benefit of the end user, not the dealerships, and Honda designed, manufactured and marketed the Class Vehicles intending that they would be purchased by consumers such as Plaintiffs and Class Members.

### H. Honda Received Pre-Suit Notice Multiple Times and in Multiple Ways

340. Honda had extensive and exclusive notice of the Engine Defect, as detailed in Section D, *supra*, paragraphs 153-286. Additionally, given Honda's extensive and exclusive knowledge of the Engine Defect, its latency, and Honda's inability to repair it, any additional notice requirement would be futile.

341. However, Honda also had actual notice of Plaintiffs' claims. At the time of filing this complaint, Plaintiffs served a written notice and demand for relief on Defendants for corrective action concerning the defect at issue in this complaint. Exhibit J. The notice specifically described the defect at issue, stated the notice was being sent pursuant to Mass Gen. Laws ch. 93A, § 9 and California Civil Code § 1782, and stated Defendants had breached warranties and violated Massachusetts and California consumer statutes. The notice letter further stated that it was being sent on behalf of Plaintiffs and all other members of the nationwide Class as defined herein.

342. Honda also had actual notice of Plaintiffs' claims through the filing of the class action lawsuit captioned, *Bissell v. American Honda Motor Co. et al*, Case No. 3:24-cv-02286-AJB-MMP (S.D. Cal.) and another written notice and demand letter dated December 6, 2024, that was provided to Honda in connection with the *Bissell* action (Exhibit G to the *Bissell* complaint), both of which specifically described the defect at issue here and stated Defendants had breached warranties and violated multiple consumer statutes due to its manufacturing, marketing, and selling of the Class Vehicles with the Engine Defect.

**I. Applicable Warranties**

343. Honda issued a New Vehicle Limited Warranty for the Class Vehicles. Honda issued its Limited Warranty for the benefit of Plaintiffs and Class Members, and for the purpose of persuading Plaintiffs and Class Members to purchase the Class Vehicles.

344. Honda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

345. The Class Vehicles sold and leased by Honda included a written express warranty, which provides: "All new Honda vehicles are covered by a 3-Year/36,000-

Mile New Vehicle Limited Warranty, plus a 5-Year/60,000-Mile Powertrain Limited Warranty."[130]

346. Honda instructs vehicle owners and lessees to take their Class Vehicles to a Honda-certified dealership for warranty repairs. Many owners and lessees have presented their Class Vehicles to Honda-certified dealerships with complaints arising from the Engine Defect and have been denied a free repair.

347. Honda has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective, and (2) refusing to perform and/or failing to timely issue adequate repairs to correct the Engine Defect.

348. Moreover, Honda's warranty fails in its essential purpose because the company has failed to offer an effective and permanent repair for the Engine Defect. Rather, Honda simply replaces defective head gaskets and other failed components with equally defective head gaskets and other failed components and fails to correct and/or properly diagnose the underlying cause.

349. Honda has notice of its breach and fraud based on its actual and exclusive knowledge of the Engine Defect.

350. Moreover, Honda's failure to effectively repair the Engine Defect makes any notice requirement futile.

351. Both warranties are applicable to the Engine Defect; however, Honda has failed to correct the issue.

352. Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."

353. Each Class Vehicle's original engine is included in the New Vehicle Limited Warranty. This includes "[c]ylinder block and head and all internal parts,

---

[130] https://owners.honda.com/Documentum/Warranty/Handbooks/2022_Honda_Warranty_Basebook.pdf

timing gears and gaskets, timing chain/belt and cover, flywheel, valve covers, oil pan, oil pump, intake and exhaust manifolds, engine mounts, engine/powertrain control module, water pump, fuel pump, seals and gaskets."[131]

354. The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."[132]

355. Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

356. Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the Engine Defect.

357. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiffs and other Class members.

358. Among other things, Plaintiffs and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda.

359. A gross disparity in bargaining power existed between Honda and other Class Members, and Honda knew of the Engine Defect at the time of sale.

## TOLLING OF THE STATUTE OF LIMITATIONS

### a. Discovery Rule Tolling

360. Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicle was defective within the time period of any applicable statutes of limitation.

---

131 *Id.*

132 *Id.*

361. Neither Plaintiffs nor the other Class Members knew or could have known of the Engine Defect in their Class Vehicles.

**b. Fraudulent Concealment Tolling**

362. Throughout the time period relevant to this action, Honda concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Engine Defect described herein.

363. Indeed, Honda kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the defect, even upon reasonable exercise of diligence.

364. Specifically, since at least 2016, Honda has been aware that the 1.5L and 2.0L engines installed in the Class Vehicles were defective.

365. Despite its knowledge of the Engine Defect, Honda failed to disclose and concealed, and continues to conceal, this critical information from Plaintiffs and the other Class Members, even though, at any point in time, it could have done so through individual correspondence, media release, or by other means.

366. Honda affirmatively and actively concealed the Engine Defect when it continued marketing the Class Vehicles and introducing new vehicles with this engine, despite knowing that it was defective.

367. Plaintiffs and the other Class Members justifiably relied on Honda to disclose the Engine Defect in the Class Vehicles that they purchased or leased, because that defect was hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

368. Thus, the running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the defect, by virtue of the fraudulent concealment doctrine.

**Estoppel**

369. Honda knew about the Engine Defect since at least 2016.

370. However, Honda did not disclose the Engine Defect to Plaintiffs or the other Class Members, nor did Honda warn Plaintiffs and Class Members of the dangers of the Engine Defect.

371. Instead, Honda continued to mass-market the Class Vehicles solely for the purpose of generating revenues for Honda's benefit.

372. Honda still has not released a countermeasure to remedy the Engine Defect.

373. Because of Honda's unwillingness to provide adequate repairs, Plaintiffs and Class Members were led to believe that no problem existed or that the issue was resolved, only to find out it would later fail again. Honda was merely replacing defective components with other equally defective components, rather than eliminating the Engine Defect for good.

374. Honda was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of the Class Vehicles.

375. Honda knowingly concealed the true nature, quality, and character of the Class Vehicles.

376. Based on the foregoing, Honda is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

377. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Nationwide Class:

> All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in the United States, the District of Columbia, Puerto Rico, and all other United States territories and/or possessions.

378. Plaintiffs also bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following statewide classes:

> Alabama Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Alabama.

Illinois Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Illinois.

Louisiana Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Louisiana.

Massachusetts Class: All current and former owners or lessees of a Class Vehicle (as defined herein) that was purchased or leased in Massachusetts.

379. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed by amendment or amended complaint or narrowed at class certification.

380. Excluded from the Classes are HML and AHM and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

381. This action has been brought and may properly be maintained on behalf of the Classes proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

382. **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that there are thousands of Class Members, the precise number of Class Members is unknown to Plaintiffs but may be ascertained from Honda's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

383. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact, which

predominate over any questions affecting individual Class Members, including, without limitation:

a. whether Honda engaged in the conduct alleged herein;

b. whether Honda's alleged conduct violates applicable law;

c. whether Honda designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

d. whether Honda misled Class Members about the quality of the Class Vehicles;

e. whether the Class Vehicles contain the Engine Defect;

f. whether Honda had actual or imputed knowledge about the alleged defect but failed to disclose it to Plaintiffs and the other Class Members;

g. whether Honda's omissions and concealment regarding the quality of the Class Vehicles were deceptive in violation of state consumer protection laws;

h. whether Honda breached its express warranty to the Class Members with respect to the Class Vehicles;

i. whether Class Members overpaid for their Class Vehicles as a result of the Engine Defect alleged herein;

j. whether Class Members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

k. the amount and nature of relief to be awarded to Plaintiffs and the other Class Members.

384. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class Members' claims because Plaintiffs and the other Class Members purchased or leased Class Vehicles with a uniform defect. Neither

Plaintiffs nor the other Class Members would have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known of the Engine Defect in the Class Vehicles. Plaintiffs and the other Class Members suffered damages as a direct proximate result of the same wrongful practices in which Honda engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class Members.

385. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class that they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

386. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Honda has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members as a whole.

387. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Honda, so it would be impracticable for the Class Members to individually seek redress for Honda's wrongful conduct. Even if the Class Members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

**Nationwide Class**

### COUNT 1

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

### (15 U.S.C. § 2301, *et seq.*)

388. Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

389. Plaintiffs bring this count on behalf of themselves and the other Class Members.

390. Plaintiffs and the Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

391. Honda is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

392. The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

393. Honda marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs and the other Class Members' decisions to purchase or lease the Class Vehicles.

394. In connection with the purchase or lease of each of the Class Vehicles, Honda provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, all new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle Limited Warranty, plus a 5-Year/60,000-Mile Powertrain Limited Warranty. Under warranties provided to Plaintiff and the other members of the Class, Honda promised to repair or replace defective Engines and/or components arising out of defects in materials and/or

workmanship, such as the Engine Defect, at no cost to owners or lessors of the Class Vehicles.

395. Honda's warranties formed part of the basis of the bargain that was reached when Plaintiffs and the other Class Members purchased or leased their Class Vehicles. The affirmations of fact and/or promises made by Honda in the warranties are express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand and Honda on the other.

396. Despite the existence of the warranties, Honda failed to inform Plaintiffs and the other Class Members that the Class Vehicles contained the Engine Defect, and, thus, wrongfully transferred the costs of repair or replacement of the Engines to Plaintiffs and the other Class Members.

397. Honda has failed to provide Plaintiffs or the other members of the Class with a meaningful remedy for the Engine Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

398. Plaintiffs and the Class Members performed all conditions precedent under the contract between the parties.

399. As described above, Honda was provided pre-suit notice of the Engine Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Engine Defect and, on information and belief, have refused to repair or replace the Engines free of charge despite the Engine Defect's existence at the time of sale or lease of the Class Vehicles.

400. Honda is in privity with Plaintiffs and members of the Class. Plaintiffs and Class Members, not the dealers, were the intended beneficiaries of Honda's Class Vehicles and the associated written warranties. Honda designed and manufactured the Class Vehicles, and created the advertising, marketing, and representations at issue

BLOOD HURST & O' REARDON, LLP

and warranted the Class Vehicles to Plaintiffs and members of the Class directly and/or through the doctrine of agency. Honda's sale of the Class Vehicles was through authorized dealers. Purchase or lease through authorized dealers is sufficient to create privity because such authorized sellers are Honda's agents for the purpose of the sale and lease of the Class Vehicles. Further, Honda knew the identity, purpose and requirements of Plaintiffs and members of the Class and designed, manufactured and marketed the Class Vehicles to meet their requirements.

401. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

402. Honda has been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class Members were not required to do so because affording Honda a reasonable opportunity to cure their breach of written warranties would have been futile. Honda was also on notice of the alleged defect from the complaints and service requests it received from Class Members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

403. As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the other Class Members have been damaged in an amount to be determined at trial.

404. Finally, because of Honda's breach of express warranty as set forth herein, Plaintiffs and the other members of the Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and the other Class Members of the purchase or lease price of all Class Vehicles currently owned or leased, and for incidental and consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**<u>COUNT 2</u>**

**VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**

**(Cal. Civil Code § 1750, *et seq.*)**

**(Individually and on behalf of the Nationwide Class)**

405. Plaintiffs incorporate by reference each allegation as if fully set forth herein.

406. Plaintiffs bring this claim on behalf of themselves and the other members of the Class who purchased or leased Class Vehicles in states whose state consumer laws do not materially conflict with California's Consumer Legal Remedies Act (the "CLRA"), as applied to the facts of this case. The application of California law to the claims of the nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, and the challenged conduct—namely, the design, testing, and dissemination of uniform misrepresentations and omissions regarding the Class Vehicles—emanated from Honda's headquarters in California. Honda's California offices directed and implemented the uniform national advertising campaign and warranty policy decisions that form the basis of Plaintiffs' claims. As a result, California has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiffs reserve the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

407. HML is a "person" as defined by California Civil Code § 1761(c). AHM is a "person" as defined by California Civil Code § 1761(c).

408. Plaintiffs and the Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

409. By failing to disclose and concealing the defective nature of the Class Vehicles' Engines from Plaintiffs and the other Class Members, Honda violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

410. Honda's unfair and deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

411. Honda knew that the Class Vehicles' Engines suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

412. Honda was under a duty to Plaintiffs and the other Class Members to disclose the defective nature of the Class Vehicles' Engines and/or the associated repair costs because: a) Honda was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' Engines; b) Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that their Engines have a dangerous safety defect until after they purchased the Class Vehicles; and c) Honda knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn about or discover the Engine Defect.

413. By failing to disclose the Engine Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so.

414. The facts concealed or not disclosed by Honda to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles, or to pay less for them. Had Plaintiffs and the other Class Members known that the Class

Vehicles' Engines are defective, they would not have purchased the Class Vehicles or would have paid less for them.

415. Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Engine Defect. That is the reasonable and objective consumer expectation for vehicles and their Engines.

416. As a result of Honda's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual damages in that the Class Vehicles and their Engines are defective and require repairs or replacement.

417. As a direct and proximate result of Honda's unfair or deceptive acts or practices, Plaintiffs and the other Class Members have suffered and will continue to suffer actual damages.

418. As described above, including in paragraphs 340-342, Honda was provided pre-suit notice of the Engine Defect, and as such have been afforded a reasonable opportunity to cure its breach of written warranties. Additionally, pursuant to Cal. Civ. Code § 1782(a), Honda was notified for at least the second time in writing by certified mail of the particular violations of Section 1770 of the CLRA, which notification demanded that Honda rectify the problems associated with the actions detailed above and give notice to all affected consumers of Honda's intent to so act. A copy of the letter is attached hereto as Exhibit J.

419. If Honda fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782 of the CLRA, Plaintiffs will amend this complaint to add claims for actual punitive and statutory damages, as appropriate.

420. Honda's conduct is fraudulent, wanton and malicious.

421. Plaintiffs seek all available relief under the CLRA for all violations complained of herein, including, but not limited to, damages, punitive damages, attorneys' fees and cost and any other relief that the Court deems proper.

422. Accordingly, Plaintiffs and the other Class Members seek an order enjoining the acts and practices described above.

423. Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit K is the affidavit showing that this action has been commenced in the proper forum.

## COUNT 3

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(Individually and on behalf of the Nationwide Class)**

424. Plaintiffs incorporate by reference each allegation as if fully set forth herein.

425. Plaintiffs bring this claim on behalf of themselves and the other members of the Class who purchased or leased Class Vehicles in states whose state consumer laws do not materially conflict with California's Unfair Competition Law (the "UCL"), as applied to the facts of this case. The application of California law to the claims of the nationwide Class is proper and constitutional. Defendant Honda has its principal place of business in California, and the challenged conduct—namely, the design, testing, and dissemination of uniform misrepresentations and omissions regarding the Class Vehicles—emanated from Honda's headquarters in California. Honda's California offices directed and implemented the uniform national advertising campaign and warranty policy decisions that form the basis of Plaintiffs' claims. As a result, California has a significant aggregation of contacts with each Class member's claims sufficient to satisfy constitutional due process. Further, under California's choice-of-law rules, California law may be applied on a classwide basis because the interests of other states do not materially conflict with California's interest in regulating misconduct that originated within its borders. To the extent any material conflict is shown at the class certification stage, Plaintiffs reserve the right to propose subclasses or pursue claims under the laws of individual states as appropriate.

BLOOD HURST & O' REARDON, LLP

426. As a result of their reliance on Honda's omissions and/or misrepresentations, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value in connection with the purchase or lease of their Class Vehicles. Additionally, as a result of the Engine Defect, Plaintiffs and members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

427. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising.

428. Honda knew that the Class Vehicles' Engines suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

429. In failing to disclose the Engine Defect, Honda knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

430. Honda was under a duty to Plaintiffs and the other members of the Class to disclose the defective nature of the Class Vehicles' Engines because: a) Honda was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' Engines; b) Honda made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' Engines; and c) Honda actively concealed the defective nature of the Class Vehicles' Engines from Plaintiffs and the other Class Members at the time of sale/lease and thereafter.

431. The facts concealed or not disclosed by Honda to Plaintiff and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether to purchase or lease Honda's Class Vehicles, or to pay less for them. Had Plaintiffs and the other Class Members known that the Class Vehicles suffered from the Engine Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

432. Honda continues to conceal the defective nature of the Class Vehicles and their Engines even after Plaintiffs and the other Class Members began to report problems. Indeed, Honda continues to cover up and conceal the true nature of this systematic problem today.

433. Honda's omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Honda's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Plaintiffs also asserts a violation of public policy arising from Honda's withholding of material safety facts from consumers. Honda's violation of consumer protection and unfair competition laws resulted in harm to consumers.

434. Honda's omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

435. Honda's acts, conduct, and practices were fraudulent, in that they constituted business practices and acts that were likely to deceive reasonable members of the public. Honda's acts, conduct, and practices were fraudulent because they are immoral, unethical, oppressive, unscrupulous, and/or are substantially injurious to consumers.

436. Honda's acts, conduct, and practices were unfair in that they constituted business practices and acts the utility of which does not outweigh the harm to consumers. Honda's business acts and practices were further unfair in that they offend established public policy, are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

437. California Business and Professions Code § 17200 prohibits any "unlawful . . . business act or practice." Honda has violated § 17200's prohibition against engaging in unlawful acts and practices by, inter alia, knowing that the Class Vehicles' Engines suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use,

and yet, as set forth herein, failed to disclose the Engine Defect, knowingly and intentionally concealed material facts and breached their duty not to do so. Honda's acts, conduct, and practices were unlawful, in that they constituted:

a. Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.;

b. Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et seq.;

c. Violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.;

d. Violations of Magnuson-Moss Consumer Warranty Act, 15 U.S.C. § 2301, et seq.;

e. Violations of California Civil Code sections 1572, 1573, 1709, 1710 and 1711; and

f. Violations of the express and implied warranty provisions of California Commercial Code sections 2313 and 2314.

Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

438. Thus, by their conduct, Honda has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

439. Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business and were capable of deceiving a substantial portion of the purchasing public.

440. As described above, Honda was provided pre-suit notice of the Engine Defect, and as such have been afforded a reasonable opportunity to cure its fraud and breach of written warranties. Any additional time to do so would be unnecessary and futile because Honda has known of and concealed the Engine Defect and, on information and belief, have refused to repair or replace the Engines free of charge

despite the Engine Defect's existence at the time of sale or lease of the Class Vehicles.

441. As a direct and proximate result of Honda's unfair and deceptive practices, Plaintiffs and the other Class Members have suffered and will continue to suffer actual damages.

442. Honda has been unjustly enriched and should be required to make restitution to Plaintiffs and the other Class Members pursuant to sections 17203 and 17204 of the California Business & Professions Code.

**Alabama Class**

**COUNT 4**

**VIOLATIONS OF ALABAMA'S DECEPTIVE TRADE PRACTICES ACT**

**ALA. CODE §§ 8-19-1, *et seq*.**

**(Individually and on behalf of the Statewide Class)**

**(As to all Defendants)**

443. Plaintiffs Polson and Richardson ("Plaintiffs" for purposes of the Alabama Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

444. Plaintiffs bring this claim individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

445. The Alabama Deceptive Trade Practices Act, Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

446. By the conduct described in detail above and incorporated herein, Defendants engaged in deceptive trade practices.

447. Defendants' omissions regarding the Engine Defect, described above, which causes the engine to prematurely fail, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

448. Defendants intended for Plaintiffs and the other Class members to rely on the omissions regarding the Engine Defect.

449. Plaintiffs and the other Class members justifiably acted or relied to their detriment upon Defendants' omissions of fact concerning the above-described Engine Defect, as evidenced by Plaintiffs and the other Class members' purchases of Class Vehicles.

450. Had Defendants disclosed all material information regarding the Engine Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

451. Defendants' omissions have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

452. Honda was provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

453. Further, Honda has refused to provide an adequate and timely warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. Customers that have presented their vehicles for warranty repair due to Engine failure have been denied adequate repairs.

454. As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles, or, alternatively, would have paid less for them had the truth about the Engine Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual

damages, attorneys' fees and costs, and all other relief allowed under Ala. Code. §§ 8-19-1, *et seq*.

**COUNT 5**

**BREACH OF EXPRESS WARRANTY**

**ALA. CODE §§ 7-2-313 AND 7-2A-210**

**(Individually and on behalf of the Statewide Class)**

455. Plaintiffs Polson and Richardson ("Plaintiffs" for purposes of the Alabama Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

456. Plaintiffs bring this claim individually and on behalf of the other members of the Alabama Class (the "Class" for purposes of this Count).

457. Honda is a merchant with respect to the Class Vehicles.

458. In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

459. Honda's written express warranties formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

460. Honda breached its express warranty to repair defective parts in the Class Vehicles. Honda admittedly has not repaired the Class Vehicles' Engine Defect.

461. Honda was provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

462. Further, Honda has refused to provide an adequate and timely warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. Customers that have presented their vehicles for warranty repair due to Engine failure have been denied adequate repairs.

463. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

464. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited remedy of repair, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

465. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Honda Vehicles under false pretenses.

466. As a direct and proximate result of Honda's breach of its express warranty, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

**<u>COUNT 6</u>**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**ALA. CODE §§ 7-2-314 AND 7-2A-314**

**(Individually and on behalf of the Statewide Class)**

467. Plaintiffs Polson and Richardson ("Plaintiffs" for purposes of the Alabama Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

468. Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

469. Honda is a merchant with respect to motor vehicles under Ala. Code §§ 7-2-104 and 7-2A-103.

470. Pursuant to Ala. Code §§ 7-2-314 and 7-2A-212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

471. The Class Vehicles do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Engine Defect which causes the Class Vehicles' Engine to prematurely fail.

472. Honda was provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

473. Further, Honda has refused to provide an adequate and timely warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Engine failure have been denied adequate repair.

474. Plaintiffs and the other Class members suffered injuries due to the defective nature of the Class Vehicles and Honda's breach of the warranty of merchantability.

475. As a direct and proximate result of Honda's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT 7**

**FRAUDULENT OMISSION**

**(Individually and on behalf of the Statewide Class)**

476. Plaintiffs Polson and Richardson ("Plaintiffs" for purposes of the Alabama Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

477. Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

478. Defendants were aware of the Engine Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiffs and the other members of the Class.

479. Having been aware of the Engine Defect within the Class Vehicles, and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Engine Defect, Defendants had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

480. Defendants did not disclose the Engine Defect to Plaintiffs and the other members of the Class in connection with the sale of the Class Vehicles.

481. For the reasons set forth above, the Engine Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

482. In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on Defendants to disclose known material defects with respect to the Class Vehicles.

483. Had Plaintiffs and the other members of the Class known of the Engine Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

484. Through its omissions regarding the Engine Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and the other members of the Class to purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

485. As a direct and proximate result of Defendants' omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not

have purchased the Class Vehicles at all if the Engine Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT 8

## UNJUST ENRICHMENT

## (Individually and on behalf of the Statewide Class)

486. Plaintiffs Polson and Richardson ("Plaintiffs" for purposes of the Alabama Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

487. Plaintiffs bring this Count individually and on behalf of the other members of the Alabama Class (the "Class," for purposes of this Count).

488. Defendants have benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Defendants' concealment of the Engine Defect, and Plaintiffs and the other members of the Class have overpaid for these vehicles.

489. Defendants have received and retained unjust benefits from Plaintiffs and the other members of the Class, and inequity has resulted.

490. It is inequitable and unconscionable for Defendants to retain these benefits.

491. Because Defendants concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Defendants' misconduct.

492. Defendants knowingly accepted the unjust benefits of its wrongful conduct.

493. As a result of Defendants' misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

///

///

**<u>Illinois Class</u>**

**<u>COUNT 9</u>**

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**815 Ill. Comp. Stat. 505/1, *et seq.***

**(Individually and on behalf of the Statewide Class)**

494. Plaintiffs Alcantara and Wise ("Plaintiffs," for purposes of the Illinois Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

495. Plaintiffs bring this claim individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

496. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, states, "Unfair methods of competition and unfair or deceptive acts or practices . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

497. By the conduct described in detail above and incorporated herein, Honda engaged in unfair or deceptive acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

498. Honda's omissions regarding the Engine Defect described above concern material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

499. Honda intended for Plaintiffs and the other Class members to rely on Honda's omissions regarding the Engine.

500. Plaintiffs and the other Class members justifiably acted or relied to their detriment upon Honda's omissions of fact concerning the above-described Engine Defect as evidenced by Plaintiffs' and the other Class members' purchases of Class vehicles.

501. Had Honda disclosed all material information regarding the Engine Defect to Plaintiffs and the other Class members, Plaintiffs and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

502. Honda's omissions deceived Plaintiffs, and those same business practices have deceived or are likely to deceive members of the consuming public and other members of the Class.

503. In addition to being deceptive, Honda's business practices were unfair because Honda knowingly sold Plaintiffs and the other Class members Class Vehicles with defective engines that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiffs and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiffs and the other Class members or to competition under all of the circumstances. Moreover, in light of Honda's exclusive knowledge of the Engine Defect, the injury is not one that Plaintiffs or the other Class members could have reasonably avoided.

504. As a direct and proximate result of Honda's unfair and deceptive trade practices, Plaintiffs and the other Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles or alternatively would have paid less for them had the truth about the Engine Defect been disclosed. Plaintiffs and the other Class members also suffered diminished value of their vehicles. Plaintiffs and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under 816 Ill. Comp. Stat. 505/1, *et seq.*

///

///

///

///

**<u>COUNT 10</u>**

**BREACH OF EXPRESS WARRANTY**

**810 Ill. Comp. Stat. 5/2-313 and 5/2A-210**

**(Individually and on behalf of the Statewide Class)**

505. Plaintiffs Alcantara and Wise ("Plaintiffs," for purposes of the Illinois Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

506. Plaintiffs bring this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

507. Honda is and was at all relevant times a merchant with respect to the Class Vehicles.

508. In its New Vehicle Limited Warranty, Honda expressly warranted that it would "repair or replace any part that is defective in material or workmanship under normal use."

509. Honda's Limited Warranty formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles equipped with the defective Engine.

510. Honda breached its express warranty to repair defects in materials and workmanship within the Class Vehicles.

511. Honda has not repaired, and has been unable to repair, the Class Vehicles' materials and workmanship defects.

512. Honda was provided notice of the Engine through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering.

513. Honda has actual knowledge of the Engine Defect as alleged herein, satisfying any notice requirement. Moreover, due to Honda's failure to remedy the Engine Defect, any notice requirement is futile.

514. Furthermore, the Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members



BLOOD HURST & O' REARDON, LLP

00226660

whole and because Honda has failed and/or refused to adequately provide the promised remedies within a reasonable time.

515. Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair or parts defective in materials and workmanship, and Plaintiffs, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

**COUNT 11**

**FRAUDULENT OMISSION**

**(Individually and on behalf of the Statewide Class)**

516. Plaintiffs Alcantara and Wise ("Plaintiffs," for purposes of the Illinois Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

517. Plaintiffs bring this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

518. Honda was aware of the Engine Defect when it marketed and sold the Class Vehicles to Plaintiffs and the other Class members.

519. Having been aware of the Engine Defect in the Class Vehicles and having known that Plaintiffs and the other members of the Class could not have reasonably been expected to know of the Engine Defect, Honda had a duty to disclose the defect to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

520. Honda did not disclose the Engine Defect in the Class Vehicles to Plaintiffs and the other members of the Class in connection with the sale or lease of the Class Vehicles.

521. For the reasons set forth above, the Engine Defect comprises material information with respect to the sale or lease of the Class Vehicles.

522. In purchasing the Class Vehicles, Plaintiffs and the other members of the Class reasonably relied on Honda to disclose known material defects with respect to the Class Vehicles.

523. Through its omissions regarding the Engine Defect, Honda intended to induce and did induce Plaintiffs and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

524. As a direct and proximate result of Honda's omissions, Plaintiffs and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Engine Defect had been disclosed to them and therefore have incurred damages in an amount to be determined at trial.

**<u>COUNT 12</u>**

**UNJUST ENRICHMENT**

**(Individually and on behalf of the Statewide Class)**

525. Plaintiffs Alcantara and Wise ("Plaintiffs," for purposes of the Illinois Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

526. Plaintiffs bring this Count individually and on behalf of the other members of the Illinois Class (the "Class," for purposes of this Count).

527. Honda has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Honda's concealment of the Engine Defect, and Plaintiffs and the other Class members have overpaid for these vehicles.

528. Honda has received and retained unjust benefits from Plaintiffs and the other Class members, and inequity has resulted.

529. It is inequitable and unconscionable for Honda to retain these benefits.

530. Because Honda concealed its fraud and deception, Plaintiffs and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Honda's misconduct.

531. Honda knowingly accepted the unjust benefits of its misconduct. As a result of Honda's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiffs and the other members of the Class in an amount to be proven at trial.

**Louisiana Class**

**COUNT 13**

**VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**LA. REV. STAT. ANN. §§ 51:1401, *et seq*.**

**(Individually and on behalf of the Statewide Class)**

532. Plaintiff Bowman ("Plaintiff" for purposes of this Count) incorporate and reallege each preceding paragraph as though fully set forth herein.

533. This Count is brought on behalf of Plaintiff and the Louisiana Class ("Class" for the purposes of this Count) for violation of Louisiana's Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq*. ("UTPA"), which prohibits, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. Ann. § 51:1405(A).

534. The foregoing acts, conduct and omission of Honda constitute unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of Louisiana's UTPA.

535. Honda's design, engineering, testing, manufacture, distribution, marketing, advertising, labeling, and sale of the Class Vehicles constitutes "commerce" as defined by La. Rev. Stat. Ann. § 51:1402(10).

536. Honda's conduct violates UTPA because Hondaengaged in the deceptive acts and practices described above and those acts and/or omissions possessed the tendency or capacity to mislead, or created the likelihood of deception in the minds of consumers and the public at large and did so deceive them with respect to the true qualities and characteristics of the Class Vehicles.

537. Honda's deceptive conduct and its false and misleading statements about Class Vehicle and engine safety and dependability and omissions regarding the Engine Defect, which causes the engines to overheat, coolant to leak into the cylinders, and the head gaskets to prematurely fail, are facts that a reasonable person would have considered material in deciding whether or not to purchase or lease (or how much they were willing to pay to purchase or lease) the Class Vehicles.

538. Honda's acts and practices are unfair because they offend the public policy of the state of Louisiana and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

539. Honda's acts and practices described above were directed at Plaintiff and the public at large and were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class who justifiably acted or relied to their detriment upon Defendants' misrepresentations and omissions of fact, as evidenced by Plaintiff and the other Class Members' leasing and purchasing of Class Vehicles.

540. Had Honda disclosed all material information regarding the Engine Defect to Plaintiff and the other Class Members, Plaintiff and the other Class Members would not have purchased or leased Class Vehicles or would have paid less to do so.

541. Honda's unfair and deceptive acts and practices, and/or misrepresentations and omissions, have deceived Plaintiff, and those same business practices have deceived or are likely to deceive members of the consuming public and the other members of the Class.

542. As a direct and proximate result of Honda's deceptive commercial practices, Plaintiff and the other Class Members have suffered ascertainable loss and actual damages. Plaintiff and the other Class Members would not have purchased or leased the Class Vehicles or would have paid less for them had Defendants disclosed the truth about the Engine Defect. Plaintiff and the other Class Members also suffered diminished value of their vehicles and other losses.

543. As a direct and proximate result of Honda's unfair and deceptive commercial practices, Plaintiff and the other Class Members were harmed by Honda described above, including Honda's failure to notify them of the Engine Defect, failure to direct them to stop driving their Class Vehicles, and failure to offer Class Members a free loaner vehicle of comparable make, model, or value as their Class Vehicles until Honda was able to devise a remedy that that is safe and dependable (if ever) and implement it in each Class Vehicle. Honda's failure to do so continues to expose Plaintiff and the Class to the risk of serious injury and death.

544. La. Rev. Stat. Ann. § 51:1409(A) provides that "[i]f the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained." La. Rev. Stat. Ann. § 51:1409(A) further provides that, "[i]n the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs."

545. Honda's violation of LUTPA was willful and Honda's refusal to conform the vehicles to the warranties, and to reimburse consumers for their reasonable losses which result from Honda's acts and omissions is unwarranted. Honda knowingly and willfully marketed the Class Vehicles as safe and dependable all the while knowing they were not, and that the Engine Defect poses a serious risk of injury rendering the Class Vehicles unsafe. Honda, through its willful and knowing deceptive acts and practices, as detailed above, have willfully and knowingly exposed Plaintiff and the Class to the risk of serious injury and death, and continue to do so by

virtue of concealing the Engine Defect, failing to tell consumers that the Class Vehicles are defective, and refusing to perform and/or failing to timely issue adequate repairs to correct the Engine Defect.

546. Honda had notice of its conduct as alleged herein.

547. As a direct and proximate result of Honda's conduct in violation of LUTPA, Plaintiff and the members of the Class have been injured in an amount to be proven at trial and are entitled to treble damages under La. Rev. Stat. Ann.§ 51:1409. Because Honda's violation of LUTPA was willful and they unreasonably refused to conform the Class Vehicles to the warranties and reimburse Class Vehicle owners and lessees for their pecuniary losses Plaintiff and members of the Class are further entitled to attorney's fees under La. Rev. Stat. Ann. § 51:1409. Plaintiff and members of the Class respectfully request any additional restitution applicable under La. Rev. Stat. Ann. §§ 51:1401, *et seq*.

**COUNT 14**

**BREACH OF WARRANTY AGAINST REDHIBITORY DEFECTS**

**(Individually and on behalf of the Statewide Class)**

548. Plaintiff Bowman ("Plaintiff" for purposes of the Louisiana Class's claims) incorporate and reallege each preceding paragraph as though fully set forth herein.

549. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

550. Honda is "seller" and "merchant" with respect to the Class Vehicles.

551. A warranty of merchantability is created and implicit in the contracts for the sales of Class Vehicles. The Class Vehicles were bought and sold subject to that warranty. Further, under Louisiana law, "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold." La. Civ. Code art. 2520.

552. Honda breached its implied warranty of merchantability against redhibitory defects. At the time of sale and all relevant times, the Class Vehicles could

not pass without objection in the trade under the contract description, are not fit for their ordinary purpose, and do not conform to the promises or affirmations of fact made in marketing materials.

553. The Engine Defect is a redhibitory defect. Automobiles' ordinary purpose is providing safe, reliable transportation. The Engine Defect in the Class Vehicles makes them unsafe, unreliable and inconvenient as means of transportation. The Engine Defect affects the Class Vehicles' drivability and usefulness. Plaintiff's and the Class members' Class Vehicles are or were not drivable because of the Engine Defect. Plaintiff and members of the Class would not have bought the Class Vehicles if they had known of the redhibitory Engine Defect or they would have paid less for Class Vehicles if they had known of the redhibitory Engine Defect.

554. Automobiles prone to sudden and catastrophic engine failure are not merchantable. Based upon these defects, Honda has failed to meet the expectations of a reasonable consumer.

555. Honda breached the implied warranty of merchantability in connection with its sale and distribution of the Class Vehicles. The Engine Defect existed when the Class Vehicles left Honda's possession and before the sale was made to Plaintiff and members of the Class.

556. Honda has waived any implied warranty notice requirement by conduct because it has failed to properly repair the defect under the warranty. In any event, Plaintiff and the Class have given Honda written pre-suit notice of the defect.

557. Plaintiff and the Class notified Honda of the Engine Defect within a reasonable time after they discovered it.

558. Honda had actual notice of the Engine Defect in the Class Vehicles before sale and received reasonable notice of the breaches experienced by Plaintiff and the Class members. As alleged previously, Honda has been aware of the defects in the Class Vehicles since at least 2017.

559. Plaintiff and the Class have had sufficient direct dealings with Honda, its agents, or both to establish privity of contract. Honda has a direct relationship with its dealers, and they worked together to promote and sell the Class Vehicles. Even so, privity is not needed here because Plaintiff and the Class are intended third-party beneficiaries of contracts between Honda and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were, after all, designed for and intended to benefit consumer. In any event, privity is not needed because the Class Vehicles are dangerous instrumentalities.

560. If Plaintiff and the Class members had known about the Engine Defect in the Class Vehicles, they would not have bought them or would have paid significantly less for them because of the redhibitory defect.

561. Plaintiff and the Class members gave Honda a chance to cure its breach of warranty and otherwise complied with any obligations under the implied warranty of merchantability. That said, and despite knowing of the defect before or concurrently with the release of the Class Vehicles, Honda has refused to provide Plaintiff and the Class with appropriate warranty relief, leaving them without the functional product they thought they were buying.

562. Providing additional notice to Honda now is futile because Honda has continually failed to provide adequate remedies to Plaintiff and Class members.

563. If Honda attempted to exclude or modify the implied warranty of merchantability in writing, the attempted exclusion or modification is ineffective because it is inconspicuous. What's more, the circumstances cause any exclusion or limitation of remedies to fail their essential purpose. Any limitation or exclusion of consequential damages is substantively and procedurally unconscionable.

564. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the Class sustained damages.

///

## COUNT 15

## FRAUDULENT OMISSION

## (Individually and on behalf of the Statewide Class)

565. Plaintiff Bowman ("Plaintiff," for purposes of the Illinois Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

566. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

567. Honda was aware of the Engine Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

568. Having been aware of the Engine Defect in the Class Vehicles and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Engine Defect, Honda had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

569. Honda did not disclose the Engine Defect in the Class Vehicles to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

570. For the reasons set forth above, the Engine Defect comprises material information with respect to the sale or lease of the Class Vehicles.

571. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Honda to disclose known material defects with respect to the Class Vehicles.

572. Through its omissions regarding the Engine Defect, Honda intended to induce and did induce Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

573. As a direct and proximate result of Honda's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have

purchased the Class Vehicles at all if the Engine Defect had been disclosed to them and therefore have incurred damages in an amount to be determined at trial.

**COUNT 16**

**UNJUST ENRICHMENT**

**(Individually and on behalf of the Statewide Class)**

574. Plaintiff Bowman ("Plaintiff," for purposes of the Louisiana Class) incorporate and reallege each preceding paragraph as though fully set forth herein.

575. Plaintiff brings this Count individually and on behalf of the other members of the Louisiana Class (the "Class," for purposes of this Count).

576. Honda has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Honda's concealment of the Engine Defect, and Plaintiff and the other Class members have overpaid for these vehicles.

577. Honda has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

578. It is inequitable and unconscionable for Honda to retain these benefits.

579. Because Honda concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Honda's misconduct.

580. Honda knowingly accepted the unjust benefits of its misconduct. As a result of Honda's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

///

///

///

///

///

**Massachusetts Class**

## COUNT 17

## BREACH OF EXPRESS WARRANTY

## (MGL CH 106, § 2-313)

## (Individually and on behalf of the Statewide Class)

581. Plaintiff Kevin Lucey ("Plaintiff" for purposes of this Count) incorporates and reallege each preceding paragraph as though fully set forth herein.

582. Plaintiff brings this claim individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

583. Honda is and was at all relevant times a "merchant" with respect to motor vehicles under MGL ch. 106, § 2-104 and is a "seller" of motor vehicles under § 2-103.

584. The Class Vehicles are and were at all relevant times "goods" within the meaning of § 2-105.

585. In its New Vehicle Limited Warranty, Honda expressly warranted that it would "repair or replace any part that is defective in material or workmanship under normal use."

586. The warranty further states that all repairs/replacements made under the warranty are free of charge.

587. Honda's New Vehicle Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles with the Engine Defect.

588. Honda breached the express warranty to repair parts defective in material or workmanship by failing to repair the Engine Defect.

589. Honda has not repaired, and has been unable to repair, the Engine Defect in Plaintiff's Class Vehicle or the Class Vehicles of the other Class Members.

590. Honda was provided notice of the Engine Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering.

591. The New Vehicle Limited Warranty fails in its essential purpose because the contractual remedy of repair/replacement is insufficient to make Plaintiff and the other Class Members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

592. Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited warranty of repair/replacement, and Plaintiff, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

593. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

594. Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to Honda's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class Members' remedies would be insufficient to make Plaintiff and the other Class Members whole.

595. As a direct and proximate result of Honda's breach of express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

///

///

///

**COUNT 18**

**BREACH OF IMPLIED WARRANTY (MGL CH 106, § 2-314)**

**(Individually and on behalf of the Statewide Class)**

596. Plaintiff Kevin Lucey ("Plaintiff" for purposes of this Count) incorporates and realleges each preceding paragraph as though fully set forth herein.

597. Plaintiff brings this claim individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

598. Honda is and was at all relevant times a "merchant" with respect to motor vehicles under MGL ch. 106, § 2-104 and is a "seller" of motor vehicles under § 2-103.

599. The Class Vehicles are and were at all relevant times "goods" within the meaning of § 2-105.

600. Plaintiff and Class members are "buyers" as that term is used in § 2-103, and Honda is a "seller" as that term is used in § 2-103.

601. The Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

602. Honda marketed the Class Vehicles as safe, reliable, and high quality automobiles that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff's and Class Members' decisions to purchase the Class Vehicles.

603. There is privity because Plaintiff and other Class Members purchased the Class Vehicles from Honda, or through Honda's authorized agents for retail sales. Namely, upon information and belief, Honda controlled the marketing and sale of the Class Vehicles, Honda set the MSRP and controlled any dealership incentives which may have been available, the dealership executed the purchase agreement on behalf of Honda, that the dealership acted as Honda's agent in connection with the sale, and the dealership bound Honda to contractual obligations with the sale of the Class

Vehicles. At all relevant times, Honda was the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

604. Honda knew or had reason to know of the specific use for which the Class Vehicles were purchased.

605. Because of the Engine Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

606. Honda knew about the defect in the Class Vehicles, allowing Honda to cure their breach of warranty if it chose to do so.

607. Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class Members. Among other things, Plaintiff and other Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and Class Members, and Honda knew of the defect at the time of sale.

608. The New Vehicle Limited Warranty fails in its essential purpose because the contractual remedy of repair/replacement is insufficient to make Plaintiff and the other Class Members whole and because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time. Accordingly, the implied warranty of merchantability is not limited to the Limited Warranty period.

609. Honda has actual knowledge of the Engine Defect as alleged herein, satisfying any notice requirement. Moreover, due to Honda's failure to remedy the Engine Defect, any notice requirement is futile.

610. Plaintiff and Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein. Affording Honda a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

611. Honda was provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

612. As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiff and the Class have been damaged in an amount to be proven at trial.

## COUNT 19

## FRAUDULENT OMISSION

**(Individually and on behalf of the Statewide Class)**

613. Plaintiff Lucey ("Plaintiff," for purposes of the Massachusetts Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

614. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

615. Honda was aware of the Engine Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

616. Having been aware of the Engine Defect in the Class Vehicles and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Engine Defect, Honda had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

617. Honda did not disclose the Engine Defect in the Class Vehicles to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

618. For the reasons set forth above, the Engine Defect comprises material information with respect to the sale or lease of the Class Vehicles.

619. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Honda to disclose known material defects with respect to the Class Vehicles.

620. Through its omissions regarding the Engine Defect, Honda intended to induce and did induce Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

621. As a direct and proximate result of Honda's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Engine Defect had been disclosed to them and therefore have incurred damages in an amount to be determined at trial.

**COUNT 20**

**UNJUST ENRICHMENT**

**(Individually and on behalf of the Statewide Class)**

622. Plaintiff Lucey ("Plaintiff," for purposes of the Massachusetts Class) incorporates and realleges each preceding paragraph as though fully set forth herein.

623. Plaintiff brings this Count individually and on behalf of the other members of the Massachusetts Class (the "Class," for purposes of this Count).

624. Honda has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Honda's concealment of the Engine Defect, and Plaintiff and the other Class members have overpaid for these vehicles.

625. Honda has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

626. It is inequitable and unconscionable for Honda to retain these benefits.

627. Because Honda concealed its fraud and deception, Plaintiff and the other members of the Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Honda's misconduct.

628. Honda knowingly accepted the unjust benefits of its misconduct. As a result of Honda's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other members of the Class in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against Defendants Honda Motor Company Limited and American Honda Motor Co., Inc., as follows:

A. An order certifying the proposed Classes and designating the named Plaintiffs as the named representatives of the Classes and designating the undersigned as Class Counsel for the Classes;

B. A declaration that the engines and/or related components in Class Vehicles are defective;

C. A declaration that Honda is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

D. An order enjoining Honda to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles and directing Honda to permanently, expeditiously, and completely repair the Class Vehicles;

E. An award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, including overpayment and diminution in value damages, and punitive damages, in an amount to be proven at trial, as well as other damages available at law;

F. An award to Plaintiffs and Class Members for the return of the purchase or lease price of the Class Vehicles, with interest from the time it was paid, the

reimbursement of the reasonable expenses occasioned by the sale or lease, and damages;

G. A Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket expenses and damages claims associated with the Engine Defect in Plaintiffs' and Class Members' Class Vehicles, can be made and paid, such that Honda, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defect;

H. A declaration that Honda must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

I. An award of attorneys' fees and costs, as allowed by law;

J. An award of pre-judgment and post-judgment interest, as provided by law;

K. Leave to amend this Complaint to conform to the evidence produced at trial; and

L. Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: July 1, 2025

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
ADAM M. BUCCI (327312)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

abucci@bholaw.com

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III
H. CLAY BARNETT, III
J. MITCH WILLIAMS
DYLAN T. MARTIN
TRENTON H. MANN
218 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
Dee.Miles@Beasleyallen.com
Clay.Barnett@BeasleyAllen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@beasleyallen.com
Trent.Mann@BeasleyAllen.com

*Attorneys for Plaintiffs*